IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01987-KMT

ERIC TYLER VETTE

    Plaintiff,

v.

K-9 UNIT DEPUTY SANDERS
SERGEANT GUSTON
K-9 DEPUTY OX

    Defendants.

---

**DEFENDANT SANDERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

---

Sergeant Keith Sanders (incorrectly captioned as "K-9 UNIT DEPUTY SANDERS") ("Defendant"), by and through his attorney Andrew R. McLetchie of Fowler, Schimberg, Flanagan & McLetchie, P.C., hereby submits the following Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) Or, In The Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. In support thereof, this Defendant states as follows:

**Certification Pursuant to D.C.COLO.LCivR 7.1**

In accordance with D.C.COLO.LCivR 7.1(b), undersigned counsel has not conferred with Plaintiff because Plaintiff proceeds *pro se* and is currently incarcerated.

**I.    INTRODUCTION**

On December 31, 2017, Plaintiff fled from law enforcement officers in his vehicle,

recklessly engaging them in a dangerous pursuit in and around downtown Montrose, Colorado, at times driving at speeds exceeding 100 miles per hour. Plaintiff was stopped and apprehended only after officers succeeded in safely diverting Plaintiff's vehicle from the road and into an open field. After coming to a stop, Plaintiff continued to attempt to evade officers by running across the field. He was overtaken by officers and placed under arrest on thirteen separate charges, including felony charges for vehicular eluding, identity theft, and unlawful possession of a controlled substance, with officers having found cocaine and numerous unauthorized prescription medications inside Plaintiff's vehicle.

Plaintiff's claim against Sergeant Sanders stems from a discrete incident that allegedly transpired during Plaintiff's arrest. Specifically, Plaintiff alleges that after he had been apprehended by officers, he was 'bitten' by a K-9 unit—a dog that Plaintiff refers to as "K-9 Deputy Ox."[1] The allegations in Plaintiff's Prisoner Complaint [ECF #1] are insufficient to state a claim for relief against Defendant Sanders. There are no factual allegations to indicate that Sergeant Sanders' alleged use of force was objectively unreasonable, nor are there any factual allegations that Oxx's fleeting engagement of Plaintiff was intentional or excessive. Moreover, Sergeant Sanders fully, contemporaneously, and in detail documented the extent of his conduct and what occurred with "K-9 Deputy Ox" in his Supplemental Narrative Report pertaining to Plaintiff's flight and arrest.[2] That Report is devoid of any facts upon which a plausible claim for

---

[1] Sergeant Sanders and Sergeant Gustin have contemporaneously filed a Motion to Strike Pursuant to Fed. R. Civ. P. 12(f), which moves the Court to strike "K-9 Deputy Ox" from Plaintiff's Prisoner Complaint as a Defendant in this action. "K-9 Deputy Ox" will also be referred to herein as "Oxx," which is the name that officers call him.

[2] Sergeant Sanders' Supplemental Narrative Report is set forth in the attached Montrose County Sheriff's Office "Incident Report," attached hereto as **Exhibit A**. As set forth in greater detail in the "Standard of Review" section, the Court may consider the Incident Report as a matter of public

relief against Sergeant Sanders may be based. Because Plaintiff's Prisoner Complaint fails to set forth any facts upon which he can show Sergeant Sanders committed a constitutional violation, Plaintiff fails to overcome Defendant Sanders' qualified immunity. Plaintiff's claim against Defendant Sanders should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, if the Court converts this Motion into one for summary judgment, the Court should enter summary judgment pursuant to Fed. R. Civ. P. 56 in Defendant Sanders' favor.

## II. STANDARD OF REVIEW

<u>Motion to Dismiss under Rule 12(b)(6)</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To do so does not require detailed factual allegations, but it does demand more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor can a complaint withstand a motion to dismiss if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a motion to dismiss under Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

record without converting this Motion into one for summary judgment. *See e.g. Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

### Consideration of Documents Outside the Pleadings

Generally, a court does not look beyond the contents of the complaint when ruling on a Rule 12(b)(6) motion to dismiss. *Chavez v. Ariz. Auto. Ins. Co.*, 2018 WL 2220279, at *3 (D. Colo. 2018) (citation omitted). However, the Court may consider in a Rule 12(b)(6) motion "facts subject to judicial notice . . . without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). This allows the Court to "'take judicial notice of its own files and records, as well as facts which are a matter of public record.'" *Id.* (citation omitted). The Court may also take judicial notice of materials in a related court case without converting the motion to dismiss into one for summary judgment. *Welch v. Saunders*, 2016 WL 8577463, at *2 n.1 (D. Colo. 2016) (citing *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008)). These documents "may only be considered to show their contents, not to prove the truth of the matters asserted therein." *Tal*, 453 F.3d at 1264 n.24 (citation omitted). The Court has "'broad discretion in determining whether or not to accept materials beyond the pleadings.'" *Chavez*, 2018 WL 2220279, at *3. "The mere fact that the parties provide[] documents to this Court does not require the Court to rely on those documents." *Id.* (citation omitted). "Thus, the Court 'has discretion in deciding whether to convert a motion to dismiss into a motion for summary judgment by accepting or rejecting the attached documents.'" *Id.* (citation omitted).

### Motion for Summary Judgment under Rule 56

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not a "'disfavored procedural shortcut,'" but rather "an important procedure 'designed to secure the just, speedy, and inexpensive determination of every

action.'" *Doshay v. Global Credit Collection Corp.*, 796 F.Supp.2d 1301, 1303 (D. Colo. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). In moving for summary judgment, the moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Where the moving party does not bear the ultimate burden of persuasion at trial, it is not the moving party's responsibility to disprove the other party's claim. *Id.* at 671. Rather, the movant may satisfy its prima facie burden by simply pointing out to the Court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *Id.* Once the movant has done so, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party cannot meet this burden simply by resting upon his pleadings. *Id.* Instead, the nonmoving party must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence at trial "from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671.

### III. ARGUMENT

**A. Sergeant Sanders Is Entitled to Qualified Immunity.**

At all times relevant to Plaintiff's claims, Sergeant Sanders was acting pursuant to his law enforcement duties as an officer of the Montrose County Sheriff's Office. As such, he is entitled to qualified immunity, which protects him "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. The City of Colo. Springs*, 709 Fed. Appx. 906, 913 (10th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is more than a defense

to liability; it is immunity from suit. *See id.* at 913; *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985)). To overcome Sergeant Sanders' qualified immunity, Plaintiff must satisfy "a heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). First, Plaintiff must demonstrate that Sergeant Sanders' individual actions violated Plaintiff's constitutional rights. *Id.* Second, Plaintiff must show that the constitutional right allegedly violated was "clearly established" at the time of Sergeant Sanders' conduct on December 31, 2017. *Id.*

Plaintiff's Prisoner Complaint fails to overcome Sergeant Sanders' qualified immunity on both prongs. First, Plaintiff's Prisoner Complaint does not sufficiently allege facts indicating a constitutional violation occurred. Plaintiff's sparse and conclusory allegations do not provide any factual information regarding the alleged "assault." There are no allegations that Sergeant Sanders directed Oxx to bite Plaintiff, or that Sergeant Sanders allowed Oxx to engage Plaintiff for an excessive amount of time. Neither of these occurred. Furthermore, taking judicial notice of the Incident Report of Plaintiff's arrest, there are no facts in that Report to support the notion that Sergeant Sanders violated Plaintiff's constitutional right to be free from excessive force. Because he is immune from suit, Sergeant Sanders should not be burdened with the uncertainty and expense of discovery and further litigation. *See Mitchell*, 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Second, to the extent Plaintiff alleges Sergeant Sanders dispatched Oxx to bite Plaintiff, such a right is not clearly established given the circumstances of Plaintiff's felonies and dangerous flight from arrest. Accordingly, the Court should dismiss Plaintiff's claims against Sergeant Sanders pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, if the Court should determine that considering the attached Incident Report

requires converting this Motion into a Motion for Summary Judgment, judgment should be entered in Sergeant Sanders' favor pursuant to Fed. R. Civ. P. 56.

**1. Plaintiff Fails to Allege a Constitutional Violation by Sergeant Sanders.**

Plaintiff fails to state a claim for relief against Sergeant Sanders in his individual capacity. To state a claim of excessive force under the Fourth Amendment,[3] Plaintiff must allege sufficient factual material to show he was "seized," and that the alleged use of force was not objectively reasonable. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). A "seizure" in violation of the Fourth Amendment "requires an *intentional* acquisition of physical control." *Gurule v. Ambuehl*, 2018 WL 1384464, at *3 (D. Colo. 2018) (Slip copy) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)) (emphasis added). In addition to sufficiently alleging that a "seizure" occurred, Plaintiff must sufficiently allege the seizure was not objectively reasonable "from the perspective of a reasonable officer on the scene." *Marquez*, 399 F.3d at 1220 (citation omitted). The objective reasonableness standard requires the Court to "pay[] careful attention to Plaintiff's allegations" in the context of: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Gurule*, 2018 WL 1384464, at *4 (citing *Graham*, 490 U.S. at 396).

Plaintiff's Prisoner Complaint [ECF #1] fails to allege a Fourth Amendment violation. The entirety of Plaintiff's claim against Sergeant Sanders reads as follows:

> Deputy Sanders violated my constitutional rights Amendments 8 and 14 by, Police Brutality and using over excessive force when date of arrest due to Sanders punching, hitting with dog chain in face and letting dog attack me after I was

---

[3] Plaintiff's Prisoner Complaint incorrectly asserts his claims under the Eighth and Fourteenth Amendments. *See* Pl. Prisoner Compl. [ECF #1], p. 4.

already Aprehended by two sheriff's. There's no reason why I was getting assaulted by deputy Sanders an Ox while after being aprehended. This insodent hurt me and physically, emotionally, mentalally. [Sic.]

Pl. Prisoner Compl. [ECF #1] at p. 4.

Ignoring Plaintiff's conclusory allegations, as the Court must, the only "factual" allegations that appear in Plaintiff's Prisoner Complaint with respect to Sergeant Sanders are: "punching, hitting with dog chain in face and letting dog attack me after I was already aprehended by two sheriff's." *Id.* These statements, devoid of further factual detail, and also viewed in the context of the facts set forth in Sergeant Sanders' Supplemental Narrative Report, are insufficient to state a claim for relief against Sergeant Sanders. *See* Montrose County Sheriff's Office "Incident Report," attached as **Exhibit A**, at pp. 7-8 (Supplemental Narrative Report by Sergeant Sanders). The attached Supplemental Narrative Report by Sergeant Sanders, as it relates to the alleged "attack," states in full as follows:

> Upon my [Sergeant Sanders'] arrival to the scene, the suspect, Eric Tyler Vette . . . exited the vehicle and began to flee on foot in an eastward direction. I continued to drive along the field and then came up the east side of the field. I seen [sic] Deputy Gustin in his patrol vehicle, with lights and siren still activated, chasing the suspect. I then exited my patrol unit and retrieved K9 Oxx and put him on lead. I heard Deputy Gustin issuing verbal commands to the suspect. I advised Deputy Gustin to hold his position until I got there with K9 Oxx for officer safety reasons. Upon my approach to the suspect and Deputy Gustin, K9 Oxx's collar came unlatched and K9 Oxx attempted to bite the suspect. I immediately grabbed K9 Oxx by the neck and prevented him from engaging the suspect further. I then reattached the collar to K9 Oxx and placed him in a down position. I then recognized the suspect as Eric Tyler Vette. I checked Eric's right shoulder where K9 Oxx made contact with him and observed some abrasions and scratches, but no broken skin.

**Exhibit A**, "Incident Report," p. 7.

The above description is a complete, true and accurate record of Sergeant Sanders' and Oxx's interactions with Plaintiff. *See* Affidavit of Sanders, attached as **Exhibit B**, at ¶¶ 6-7, 12. Sergeant Sanders documented the extent of his or K-9 Oxx's use of force upon Plaintiff. *Id.* at ¶¶

8

12-13. Sergeant Sanders created his report as soon as practicable after the incident occurred, and recorded the facts and details regarding the encounter thoroughly and accurately. *Id.* at ¶¶ 10-12. If either Sergeant Sanders or K-9 Oxx had used force, Sergeant Sanders would have documented it. *See id.* at ¶¶ 11-13. Indeed, Sergeant Sanders recorded K-9 Oxx's attempt to bite Plaintiff, and how he prevented K-9 Oxx from engaging with Plaintiff further. *Id.* at ¶ 12; **Ex. A** at p. 7.

The Court may consider the Incident Report, including Sergeant Sanders' Supplemental Narrative Report, taking judicial notice of the facts therein, without converting this Motion to a motion for summary judgment, because the Incident Report is a public record. *See Tal*, 453 F.3d at 1264 n.24; *Chavez*, 2018 WL 2220279, at *3. The Incident Report is an admissible "public record," as defined by the Federal Rules of Evidence, because it sets out "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii); *Barrientos-Sanabria v. Holte*, 2012 WL 6107904, at *5 (D. Colo. 2012) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162, 170 (1988)) ("Investigative reports that contain an investigator's factual findings, including factually based conclusions or opinions, are admissible under this rule [Fed. R. Evid. 803(8)] as an exception to the hearsay rule."). The Incident Report also bears the hallmarks of trustworthiness, as required by Fed. R. Evid. 803(8)(B), because it is detailed, specific, internally consistent, and Sergeants Sanders and Gustin documented their narratives shortly after the incident occurred, when there would have been no motivation to alter or fabricate the information in their statements. *See* **Ex. A** at p. 4 (narrative by Sergeant Gustin date and time stamped 12/31/17 at "approximately 0023 hours"); *id.* at p. 7 (narrative by Sergeant Sanders time and date stamped 17:58:21, 12/31/17); *Perrin v. Anderson*, 784 F.2d 1040, 1047 (10th Cir. 1986) (articulating factors of a document's trustworthiness).

Nothing in Plaintiff's Prisoner Complaint or the Incident Report suggests that Plaintiff was "seized" by "K-9 Deputy Ox." Rather, as the Incident Report shows, "K-9 Deputy Ox's" engagement with Plaintiff was inadvertent and resulted in nothing more than "some abrasions and scratches, but no broken skin." Ex. A at p. 7. There is no factual basis for construing Plaintiff's sparse allegations as stating that the alleged "dog attack" was intentional. There are no allegations that Sergeant Sanders ordered Oxx to engage Plaintiff, or that Sergeant Sanders intentionally released and dispatched Oxx to bite Plaintiff. *See* Pl. Prisoner Compl. [ECF #1], p. 4. *See Gurule*, 2018 WL 1384464, at *4 (analyzing the sufficiency of plaintiff's alleged excessive force claim arising from a police dog bite on the premise the defendants intentionally "dispatched" the dog onto the plaintiff); *see also Savannah v. Collins*, 547 Fed. Appx. 874, 875 (10th Cir. 2013) (reversing denial of 12(b)(6) dismissal for second officer in failure-to-intervene claim, which had been alleged on the premise that first officer "deployed" police dog). That Oxx's collar would somehow become unlatched and Oxx would attempt to bite Plaintiff was unforeseeable. *See* Ex. A, at p. 7. Nor are there any allegations that, after Oxx became loose, Sergeant Sanders lingered and allowed Oxx to engage with Plaintiff for "an extended duration." *See Gurule*, 2018 WL 1384464, at *8 (recognizing that a dispatched dog bite of "extended duration" may rise "to the level of a constitutional violation"). To the contrary, Sergeant Sanders "immediately grabbed K9 Oxx by the neck and prevented him from engaging [Plaintiff] further." Ex. A, at p. 7. After the incident, Plaintiff was medically checked, first by EMS officials who were at the scene, and then immediately thereafter at Montrose Memorial Hospital. *Id.* at p. 6 (report by Sergeant Gustin, documenting Plaintiff's check by EMS and Sergeant Gustin's transporting Plaintiff to the Hospital for medical clearance); *id.* at pp. 7-8 (report by Sergeant Sanders, documenting the same). Plaintiff

was medically cleared, and the Incident Report contains no record of complaints or medical problems relating to a dog bite. *See id.* In fact, the primary, if not only, medical concern was Plaintiff's presentation of visible signs of a "possible drug overdose." *See id.* at pp. 6, 8. The alleged incident, at most, amounts to K9 Oxx "attempting" to bite Plaintiff, but being immediately restrained and prevented from doing so by Sergeant Sanders. *Id.* at p. 7. Plaintiff's Prisoner Complaint contains no facts to support the idea that Plaintiff was intentionally "seized" by Oxx in violation of the Fourth Amendment. This requires dismissal under Fed. R. Civ. P. 12(b)(6).

If the Court should construe Plaintiff's Prisoner Complaint as sufficiently alleging facts that Oxx's engagement with Plaintiff was "force," there is nonetheless no basis for concluding that this force was objectively unreasonable under the circumstances. Considering the *Graham* factors, Sergeant Sanders arrived at the scene knowing Plaintiff was a "wanted felon." *See* Ex. A, at p. 7. Officers had initially attempted to stop Plaintiff after running his license plate and finding he had three outstanding warrants for his arrest—one for a misdemeanor and two for felony offenses.[4] *Id.* at p. 5 (narrative by arresting officer, Sergeant Gustin). Instead of yielding, Plaintiff sped off in his vehicle, engaging officers in a circuitous and dangerous high-speed chase around downtown Montrose, with Plaintiff at times exceeding speeds of 60, 80, and 100 miles per hour. *See id.* Plaintiff did not stop until an officer performed a Tactical Vehicle Intervention ("TVI") maneuver to bring Plaintiff's vehicle to rest in an open field. *Id.* at p. 7. Even then Plaintiff did not stop, but

---

[4] Prior to his arrest on December 31, 2017, Plaintiff pled guilty to second degree assault, with serious bodily injury and with an underlying sexual factual basis, in violation of C.R.S. § 18-3-203(1)(g). *See People v. Vette*, Case No. 15CR270 (District Court of Montrose County). The state district court entered his plea agreement on August 2, 2017. *See id.* Plaintiff was sentenced on April 12, 2018, for crimes prosecuted in Case No. 15CR270 and Case No. 18CR2. The Court may take judicial notice of Plaintiff's criminal convictions. *See Welch*, 2016 WL 8577463, at *2 n.1.

11

instead attempted to run away from officers across the field. *Id.* It was approximately at this point that Sergeant Sanders and Oxx arrived at the scene. Sergeant Sanders maintains he did not use any force and that Oxx did not "attack" Plaintiff. *See* Ex. B at ¶¶ 12-13. But, even if force had been used as Plaintiff alleges, Plaintiff's felony history and his dangerous flight from arrest demonstrate that the alleged force used was reasonable under the circumstances. *See e.g. Marquez*, 399 F.3d at 1221 (deployment of police dog in the face of two fleeing robbery suspects following a high-speed car chase was reasonable); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1317 (10th Cir. 2009) (release of police dog on a potentially armed suspect who had made threatening statements and fled his home at night in a residential neighborhood was reasonable). Given Plaintiff's paltry allegations of force and the circumstances of Plaintiff's flight and arrest, Plaintiff fails to allege facts showing a Fourth Amendment violation for use of "excessive" force, requiring dismissal under Fed. R. Civ. P. 12(b)(6).

If the Court determines that considering the Incident Report requires converting this Motion into a Motion for Summary Judgment, the Court should do so, and examine the Incident Report pursuant to Rule 56 standards. In doing so, the Court will be able to conclude that there is no evidence by which Plaintiff can establish that Sergeant Sanders used excessive force or otherwise violated Plaintiff's constitutional rights in any way.

In sum, stripping Plaintiff's Prisoner Complaint of conclusory allegations and taking judicial notice of the facts set forth in the Incident Report and Sergeant Sanders' Supplemental Narrative Report, Plaintiff fails to sufficiently allege that Sergeant Sanders violated Plaintiff's constitutional rights, so as to defeat Sergeant Sanders' qualified immunity. Accordingly, Plaintiff's claim against Sergeant Sanders must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the

alternative, Sergeant Sanders is entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

### 2. Plaintiff's Alleged Right is Not "Clearly Established."

The second prong of the qualified immunity test requires the constitutional right at issue to be "clearly established" at the time of the conduct alleged. *See Brown*, 709 Fed. Appx. at 913-14. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gurule*, 2018 WL 1384464, at *6 (citations omitted). The contours of the right "must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Id.* at *7 (citation omitted). As articulated in *Gurule*, the U.S. District Court of Colorado could not find that "by 2015, the law in this Circuit was clearly established that an officer applies excessive force by dispatching a canine to apprehend a person for whom the officer has an arrest warrant and who had demonstrated an inclination to flee and evade arrest." *Id.* Undersigned counsel extended the search for such case law through December 31, 2017, and was unable to find any. Moreover, the right at issue in this case is defined by an *unintentional* deployment of a canine when effecting an arrest, a proposition that has not been addressed by the U.S. Supreme Court or Tenth Circuit. Consequently, the particular right that Plaintiff claims was allegedly violated is not "clearly established." Plaintiff cannot overcome Sergeant Sanders' qualified immunity, and Plaintiff's claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff's Complaint Fails to State a Claim Against the Montrose County Sheriff's Office.

Plaintiff's Prisoner Complaint indicates that Plaintiff is suing Defendant Sanders in his official capacity. Pl. Compl. [ECF #1], p. 2. A suit against a law enforcement officer in his official

capacity is equivalent to an action against the government entity for whom the officer works. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Thus, Plaintiff's assertion of "official capacity" claims against Sergeant Sanders is equivalent to a suit against the Montrose County Sheriff's Office ("MCSO").

Plaintiff's Prisoner Complaint contains no allegations to support a claim against the MCSO. To allege a claim under 42 U.S.C. § 1983 against a municipal entity such as MCSO, Plaintiff is required, at a minimum, to allege facts showing: (1) the existence of an MCSO policy or custom; and (2) a direct causal link between the MCSO policy or custom and Plaintiff's alleged constitutional deprivation. *Bauer v. City and Cnty. of Denver*, 642 Fed. Appx. 920, 923 (10th Cir. 2016) (citations omitted) (affirming dismissal of the plaintiff's complaint for failure to state a claim against the City and County of Denver). Plaintiff's Prisoner Complaint [ECF #1] does not set forth any allegations, conclusory or otherwise, that an MCSO policy or custom caused, or was a "moving force" of the alleged constitutional violation. Furthermore, MCSO liability cannot be premised upon a theory of vicarious liability. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013). That is, even if the actions of an MCSO officer "inflicted an injury" upon Plaintiff—which did not occur—MCSO cannot be held liable "solely for the actions of its employee." *Id.* The total absence of any allegations relating to the elements of municipal liability means that Plaintiff's "official capacity" claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

Plaintiff has failed to state a claim on which relief can be granted. The allegations in Plaintiff's Prisoner Complaint [ECF #1] are insufficient to allege that Sergeant Sanders' conduct

resulted in a violation of Plaintiff's constitutional rights. Further, the facts recorded in the Montrose County Sheriff's Office Incident Report regarding the incident—a public record of which the Court may take judicial notice—do not reveal any indication a constitutional violation occurred. Nor has the alleged right been clearly established. Thus, Plaintiff fails to plead facts to overcome Sergeant Sanders' qualified immunity. Additionally, Plaintiff fails to allege facts to state a plausible claim for relief against Sergeant Sanders in his official capacity. Therefore, Defendant Sanders respectfully requests that the Court dismiss all of Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Defendant Sanders requests that the Court construe this as a Motion for Summary Judgment and enter summary judgment in Defendant Sanders' favor pursuant to Fed. R. Civ. P. 56.

**DATED** this 4th day of March, 2019.

Respectfully Submitted,

*/s/ Andrew R. McLetchie*
Andrew R. McLetchie, Atty. No. 34035
Eden R. Rolland, Atty. No. 48877
Fowler, Schimberg, Flanagan & McLetchie, PC
350 Indiana Street, Suite 850
Golden, Colorado 80401
Telephone: 303-298-8603
Fax: 303-298-8748
A_McLetchie@fsf-law.com
E_Rolland@fsf-law.com
*Attorney for Sgt. Keith Sanders and Sgt. Steve Gustin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2019, I electronically filed the foregoing **DEFENDANT SANDERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** with the Clerk of Court using the CM/ECF system, as well as by U.S. Mail to Plaintiff at the following address:

Eric Tyler Vette, *Pro Se*
DOC #180289
Crowley County Correctional Facility (CCCF)
P.O. Box 100
Olney Springs, CO 81062

*/s/ Jill Ribera*
Jill Ribera