IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01987–KMT

ERIC TYLER VETTE,

    Plaintiff,

v.

K-9 UNIT DEPUTY SANDERS, and
SEARGENT GUSTON,

    Defendants.

---

# ORDER

---

This matter is before the court on "Defendant Gustin's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 28 [Gustin Mot.], filed March 4, 2019) and "Defendant Sanders' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Doc. No. 29 [Sanders Mot.], filed March 4, 2019). Plaintiff filed a combined response to the motions (Doc. No. 38 [Resp.], filed May 10, 2019), and Defendants filed replies (Doc. No. 42 [Gustin Reply], filed May 29, 2019; Doc. No. 43 [Sanders Reply], filed May 29, 2019).

## STATEMENT OF THE CASE

Plaintiff, proceeding *pro se*, filed his Prisoner Complaint on August 6, 2018. (Doc. No. 1 [Compl.]) Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against the defendants in their individual and official capacities. (*Id.* at 2–3.) Plaintiff alleges on December 31, 2017,

Defendant Sanders violated his constitutional rights by using "over excessive force" due to his "punching, hitting with dog chain in face and letting dog attack [Plaintiff] after [he] was already aprehinded [sic] by two sheriffs." (*Id.* at 4.) Plaintiff alleges Defendant Gustin violated his constitutional rights by "directly approving of [Defendant] Sanders's violations . . . by letting [Defendant] Sanders an[d] K-9 Ox assault [Plaintiff]." (*Id.* at 5.) Plaintiff alleges K-9 Deputy Ox bit his right shoulder and left him with scars.[1] (*Id.*) Plaintiff states the incident hurt him "physically, mentalally [sic] and emotionalally [sic]." (*Id.*) Plaintiff seeks money damages and an investigation into the defendants' actions. (*Id.* at 8.)

## STANDARDS OF REVIEW

### A. Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v.*

---

[1] The court dismissed the claims against K-9 Deputy Ox. (Doc. No. 48.) Hereafter, the court will refer to "K-9 Deputy Ox" as "Oxx," which is the name that officers call him. (*See* Sanders Mot. at 2 n.1.)

*New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B. Failure to State a Claim upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely

conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (citation omitted).

### C. *Conversion of Rule 12(b)(6) Motion to Dismiss into Summary Judgment Motion*

In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice. *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001). Defendant Sanders asks the court to take judicial notice of the Montrose County Sheriff's Office "Incident Report," including

Defendant Sanders' Supplemental Narrative Report, as a matter of public record. (Sanders Mot. at 2, n.2; 8.) Defendant Sanders has provided no law stating that police incident reports are automatically a matter of public record. Moreover, according to the Montrose County Sheriff's Office website, a party may submit a request for "Jail and Report Checks," but the request may be denied. (*See* https://montrosecountysheriffsoffice.com/mcsouploads/2019/02/Records-Request-2019.pdf.) Accordingly, the court declines to take judicial notice of the Incident Report.

Nevertheless, "[a] 12(b)(6) motion must be converted into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and 'all parties . . . [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed. R. Civ. P.] 56.' " *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)); *see also Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment). Normally, if a court decides to convert a Rule 12(b)(6) motion into a Rule 56 motion, it must provide the parties with notice to avoid unfair surprise. *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986). However, "when a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) (citing *Nichols*, 796 F.2d at 164). Moreover, because the title of Defendant Sanders' motion stated it was a motion to dismiss or, alternatively, a motion for summary judgment, and it included evidentiary materials outside of the complaint, Plaintiff had explicit notice that the court could

5

convert the motion to a motion for summary judgment. *See* 11 James Wm. Moore, *Moore's Federal Practice* ¶ 56.30[4] at p. 56–230 (3d ed. 2006) ("[c]ourts have concluded that a court is not required to give notice of its intention to convert a Rule 12(b)(6) motion into a summary judgment motion when the motion was styled in the alternative."). Thus, the court finds that Plaintiff had adequate notice of the conversion and will treat the motion as one for summary judgment.

### D. Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### A. *Qualified Immunity*

Defendants argue they are is entitled to qualified immunity on Plaintiff's claims against them in their individual capacities. The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[2] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity

---

[2] The court notes that qualified immunity is applicable only to individual capacity claims for monetary damages; it is not a defense against claims for injunctive relief, or against official capacity claims. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) (citing *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993)). Defendants have not addressed Plaintiff's claims for injunctive relief in their motions. Nevertheless, as explained *infra*, Plaintiff's claims for injunctive relief also properly dismissed.

from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz,* 533 U.S. 194, 121 (2001).

"In resolving a motion . . . based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part. *Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

### 1. *Excessive Force Claim*

Defendant Sanders argues he is entitled to summary judgment on Plaintiff's excessive force claims, and Defendant Gustin argues the excessive force claim against him should be dismissed.

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential

threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396). A "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (further citation omitted)). The objectively unreasonable test considers the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Havens v. Johnson*, 783 F.3d 776, 781–82 (10th Cir. 2015) (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (internal quotation marks omitted)).

### a. *Defendant Sanders*

The court first considers whether Defendant Sanders is entitled to summary judgment as to Plaintiff's claim he used "over excessive force" due to his "punching [and] hitting [Plaintiff] with dog chain in face and letting dog attack [Plaintiff] after [he] was already aprehinded [sic] by two sheriffs." (*Id.* at 4.) (Compl. at 4.) The court notes that Defendant Sanders' motion is devoid of any argument regarding the allegations that Defendant Sanders punched Plaintiff and hit Plaintiff in the face with a dog chain. Thus, the claim regarding these allegations must go forward.

The court analyzes Plaintiff's allegation that Defendant Sanders "let[ ] [Oxx] attack [Plaintiff]," (*id.*), using the *Graham* factors discussed above: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others;

9

and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

The first *Graham* factor favors Defendant Sanders. It is undisputed that Defendant Sanders arrived at the scene knowing Plaintiff was a "wanted felon." (*See* Mot., Ex. A [Incident Report] at 7.) Felonies are deemed more severe than when the underlying crime is a municipal code violation or a misdemeanor, for which the weight of this factor would typically fall in a plaintiff's favor. *See Clark v. Bowcutt*, 675 F. App'x 799, 807 (10th Cir. 2017); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993); *White v. Martin*, 425 F. App'x 736, 745 (10th Cir. 2011).

The second and third *Graham* factors favor Plaintiff. The court considers these factors together because the facts and analysis overlap. The factors are analyzed "at the precise moment that [the officer] used force." *See Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010). *Accord Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) ("The reasonableness of Defendants' actions depends . . . on whether the officers were in danger at the precise moment that they used force . . . .").

In his Complaint, Plaintiff states he was attacked by Oxx and assaulted by Defendant Sanders after he was apprehended by two sheriff deputies. (Compl. at 4.) Defendant Sanders provides his Supplemental Narrative Report as it relates to the alleged "attack," which states as follows:

> Upon my [Sergeant Sanders'] arrival to the scene, the suspect, Eric Tyler Vette . . . exited the vehicle and began to flee on foot in an eastward direction. I continued to drive along the field and then came up the east side of the field. I seen [sic] Deputy Gustin in his patrol vehicle, with lights and siren still activated, chasing the suspect. I then exited my patrol unit and retrieved K9 Oxx and put him on lead. I heard Deputy Gustin issuing verbal commands to the suspect. I

10

> advised Deputy Gustin to hold his position until I got there with K9 Oxx for officer safety reasons. Upon my approach to the suspect and Deputy Gustin, K9 Oxx's collar came unlatched and K9 Oxx attempted to bite the suspect. I immediately grabbed K9 Oxx by the neck and prevented him from engaging the suspect further. I then reattached the collar to K9 Oxx and placed him in a down position. I then recognized the suspect as Eric Tyler Vette . I checked Eric's right shoulder where K9 Oxx made contact with him and observed some abrasions and scratches, but no broken skin.

(Mot., Ex. A, [Incident Report] at 7.) It is unclear from the Supplemental Narrative Report whether Defendant Gustin or any other officer had already apprehended Plaintiff by the time Defendant Sanders and Oxx got to Plaintiff. Moreover, Defendant Gustin's narrative states that he observed Plaintiff running in the field, caught up to Plaintiff, and placed Plaintiff into custody; however, his narrative is silent as to when Defendant Sanders and Oxx arrived on the scene. (*See id.* at 5.) Accordingly, the court is unable to determine whether Plaintiff posed an immediate threat to the safety of the officers or others or whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight when Defendant Sanders and Oxx arrived. *Graham*, 490 U.S. at 396.

Under the totality of the circumstances, the court cannot say that Defendant Sanders has satisified his burden of showing an absence of evidence to support Plaintiff's Fourth Amendment excessive force claim against him. *Celotex Corp.*, 477 U.S. at 325. Defendant Sanders' motion for summary judgment as to the excessive force claim against him is denied.

### b. *Defendant Gustin*

Defendant Gustin construes Plaintiff's claims that he "directly approv[ed] of [Defendant] Sanders's violations . . . by letting [Defendant] Sanders an[d] K-9 Ox assault [Plaintiff]," (Compl. at 5), as a failure to intervene claim. (Gustin Mot. at 5.)

"[T]o be liable for failure to intervene, the officer[ ] must have 'observe[d] or ha[d] reason to know' of a constitutional violation and have had a 'realistic opportunity to intervene.' " *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quoting *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210) (10th Cir. 2008)). "In order for liability to attach," however, "there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is [usually] an issue of fact . . . ." *Vondrak*, 535 F.3d at 1210. Regarding the alleged attack by Oxx, Plaintiff's Complaint is devoid of allegations that Defendant Gustin could have stopped Oxx, that Defendant Gustin had the ability to control Oxx, or that Defendant Gustin had sufficient time to intervene, and thus Plaintiff has failed to state a failure to intervene claim regarding Oxx's attack. *See Savannah v. Collins*, 547 F. App'x 874, 876 (10th Cir. 2013) (Plaintiff who did not allege the defendant could have stopped K9, had the ability to control K9, or had time to intervene in K9 attack did not plead sufficient facts, taken as true, to state a claim against officer). Similarly, Plaintiff has failed to allege facts that Defendant Gustin had an opportunity to intervene in Defendant Sanders' alleged excessive force.

Accordingly, because Plaintiff has failed to state a claim that Defendant Gustin failed to intervene in excessive force, Defendant Gustin is entitled to qualified immunity as to the claims against him.

### 2. *Clearly Established*

The court next analyzes whether Defendant Sanders' alleged constitutional violation was clearly established at the time of the incident. *Leverington*, 643 F.3d at 732.

An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

Quoting *Gurule v. Ambuehl*, No. 17–CV–00826–WJM–NYW, 2018 WL 1384464, at *7 (D. Colo. Mar. 16, 2018) , Defendant Sanders argues that the "U.S. District Court of Colorado could not find that 'by 2015, the law in this Circuit was clearly established that an officer applies excessive force by dispatching a canine to apprehend a person for whom the officer has an arrest warrant and who had demonstrated an inclination to flee and evade arrest.' " (Sanders Mot. at 13.) While the magistrate judge in *Gurule* recommended that the plaintiff's claim for excessive force based upon the deployment of a police dog be dismissed upon finding that the law was not clearly established "that an officer applies excessive force by dispatching a canine to apprehend a person for whom the officer has an arrest warrant and who has demonstrated an inclination to flee and evade arrest," 2018 WL 1384464, at *7, the magistrate judge further recommended that the plaintiff's claim for excessive force based upon the officer allowing the police dog to continue to bite the plaintiff after he was subdued be allowed to proceed, finding that the law was clearly established "that continued application of force to a suspect who was submissive and on the ground, and who was not acting in a threatening or aggressive manner, could constitute excessive force," *id.* at *10.

Several district courts in this Circuit have permitted excessive force claims involving the use of a police dog to survive a qualified immunity challenge where the complaint alleged that the police dog was ordered to bite—or permitted to continue biting—the plaintiff after the plaintiff already was restrained and/or fully complying with the police officers' orders. *See*, *e.g.*, *Savannah v. Collins*, No. 12–CV–02403–RBJ–MJW, 2015 WL 4237592, at *4 (D. Colo. July 14, 2015) (finding that "both Tenth Circuit precedent and common sense establish that giving an attack command to an unrestrained police dog after a suspect has been subdued would be excessive and unreasonable"); *Moore v. Summer*, No. 12–3204–SAC, 2015 WL 1470290, at *10 (D. Kan. Mar. 31, 2015) (allowing claim for excessive force to proceed where officer allegedly ordered dog to attack without providing a warning and even though the plaintiff already had his arms raised); *Trujillo v. City of Lakewood*, No. 08–CV–00149–WDM–CBS, 2009 WL 3260724, at *4 (D. Colo. Oct. 9, 2009) (concluding "that it was clearly established that the use of force on a subdued individual posing no obvious threat ... was not warranted under the circumstances").

Given the cited case law, the court finds a reasonable officer would have known that application of force by a police service dog to a suspect who had been already been apprehended could constitute excessive force. Accordingly, the court finds Defendant Sanders is not entitled to qualified immunity on Plaintiff's excessive force claim.

### B. Official Capacity Claims

Plaintiff also sues the defendants in their official capacities, seeking money damages and injunctive relief in the form of an investigation into the defendants' actions. (Compl. at 8.)

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006,

1009 (10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  However, "local government officials sued under § 1983 in their official capacities are one and the same as the governmental entity they represent only if the local government would be suable in its own name."  *Houston v. Reich*, 932 F.2d 883, 887 (10th Cir. 1991).  Plaintiff could not bring an excessive force claim against the Montrose County Sheriff's Office ("MCSO") in this case; therefore, he cannot bring such claims against the officers in their official capacities.  *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff.").

Municipal entities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights under section 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  However, municipality may be held liable only for injuries resulting from the execution of one of its policies or customs.  *Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999).  Moreover, "a municipality cannot be liable under § 1983 for acts of a municipal official in his official capacity unless that official possesses final policymaking authority to establish municipal policy with respect to acts in question."  *Jantzen*, 188 F.3d at 1259.

Plaintiff has not alleged that Defendants Sanders and Gustin were in policymaking positions.  Therefore, Plaintiff's claims for money damages and injunctive relief against the defendants in their official capacities are dismissed under Rule 12(b)(6) for failure to state a claim.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that "Defendant Gustin's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 28) is **GRANTED**. The claims against Defendant Gustin are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). It is further

**ORDERED** that "Defendant Sanders' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Doc. No. 29) is **GRANTED** in part and **DENIED** in part, as follows:

1. The motion is **GRANTED** as to the claims against Defendant Sanders in his official capacity, which are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6);
2. The motion is **DENIED** as to Plaintiff's excessive force claim seeking money damages against Defendant Sanders in his individual capacity.

Dated this 11th day of March, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge