**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01987-KMT

ERIC TYLER VETTE

      Plaintiff,

v.

K-9 UNIT DEPUTY SANDERS
SERGEANT GUSTON
K-9 DEPUTY OX

      Defendants.

---

**DEFENDANT GUSTIN'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(b)(6)**

---

      Sergeant Steve Gustin (incorrectly captioned as "SERGEANT GUSTON") ("Defendant"),
by and through his attorney Andrew R. McLetchie of Fowler, Schimberg, Flanagan & McLetchie,
P.C., hereby submits the following Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and in
support thereof, states as follows:

**Certification Pursuant to D.C.COLO.LCivR 7.1**

      In accordance with D.C.COLO.LCivR 7.1(b), undersigned counsel has not conferred with
Plaintiff because Plaintiff proceeds *pro se* and is currently incarcerated.

## I.      INTRODUCTION

      Shortly after midnight on December 31, 2017, Plaintiff fled from law enforcement officers
in his vehicle, recklessly engaging them in a dangerous pursuit in and around downtown Montrose,
Colorado, at times driving at speeds exceeding 100 miles per hour. Plaintiff was stopped and

apprehended only after officers succeeded in safely diverting Plaintiff's vehicle from the road and into an open field. After coming to a stop, Plaintiff continued to attempt to evade officers by running across the field. He was overtaken by officers and placed under arrest on thirteen separate charges, including felony charges for vehicular eluding, identity theft, and unlawful possession of a controlled substance, with officers having found cocaine and numerous unauthorized prescription medications inside Plaintiff's vehicle.

Plaintiff's claim against Sergeant Gustin stems from a discrete incident that allegedly transpired during Plaintiff's arrest. Specifically, Plaintiff alleges that after he had been apprehended by officers, he was assaulted by Sergeant Sanders and bitten by a K-9 unit—a dog that Plaintiff refers to as "K-9 Deputy Ox."[1] Plaintiff effectively claims that Sergeant Gustin "let" the alleged assault happen. However, all of the allegations in Plaintiff's Prisoner Complaint toward Sergeant Gustin are conclusory. As such, Plaintiff fails to allege a factual basis upon which he can show that Sergeant Gustin violated Plaintiff's constitutional rights. Thus, Plaintiff's Prisoner Complaint is insufficient to state a claim for relief against Sergeant Gustin and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.      STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To do so does not require detailed factual allegations, but it does demand more than an "unadorned, the

---

[1] Sergeant Sanders and Sergeant Gustin have contemporaneously filed a Motion to Strike Pursuant to Fed. R. Civ. P. 12(f), which moves the Court to strike "K-9 Deputy Ox" from Plaintiff's Prisoner Complaint as a Defendant in this action.

defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor can a complaint withstand a motion to dismiss if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a motion to dismiss under Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.     ARGUMENT

#### A.  Sergeant Gustin Is Entitled to Qualified Immunity.

At all times relevant to Plaintiff's claims, Sergeant Gustin was acting pursuant to his law enforcement duties as an officer of the Montrose County Sheriff's Office. As such, he is entitled to qualified immunity, which protects him "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. The City of Colo. Springs*, 709 Fed. Appx. 906, 913 (10th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is more than a defense to liability; it is immunity from suit. *See id.* at 913; *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985)). To overcome Sergeant Gustin's qualified immunity, Plaintiff must satisfy "a heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). First, Plaintiff must demonstrate that Sergeant Gustin's individual actions violated Plaintiff's constitutional rights. *Id.* Second, Plaintiff must show that the constitutional right allegedly violated was "clearly established" at the time of Sergeant Gustin's conduct on December 31, 2017. *Id.*

Here, Plaintiff's Prisoner Complaint fails to sufficiently allege facts that can overcome Sergeant Gustin's qualified immunity. None of the conclusory allegations in Plaintiff's Prisoner Complaint are capable of stating a claim for relief for a constitutional violation under 42 U.S.C. § 1983, or of providing Sergeant Gustin with notice of the grounds on which the alleged constitutional violation is based. Because he is immune from suit, Sergeant Gustin should not be burdened with the uncertainty and expense of discovery and further litigation. *See Mitchell*, 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Accordingly, the Court should dismiss Plaintiff's claims against Sergeant Gustin pursuant to Fed. R. Civ. P. 12(b)(6).

### 1. Plaintiff's Prisoner Complaint Fails to Allege a Constitutional Violation by Sergeant Gustin.

Plaintiff's Prisoner Complaint fails to state a claim for relief against Sergeant Gustin in his individual capacity. The allegations in Plaintiff's Prisoner Complaint regarding Sergeant Gustin are the quintessential example of threadbare and conclusory statements, which must be disregarded. The entirety of Plaintiff's claim against Sergeant Gustin reads as follows:

> Supporting Facts: On December 31, 2017, Sergeant Gusten violated Amendmet 8 and 14 constitutional rights by directly approving of Deputy Sanders's violations of the same rights 8 and 14, by letting Deputy Sander's an K-9 Ox assault me. The insodent hurt me physically, emotionally and mentalally. [Sic.]

Pl. Prisoner Compl. [ECF #1], p. 5 (notated by Plaintiff as page 4).

These allegations do not just lack factual detail; they do not contain any facts at all. As the U.S. Supreme Court noted in *Twombly*, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the

nature of the claim, but also 'grounds' on which the claim rests. . . . Rule 8(a) . . . does not authorize

a pleader's 'bare averment that he wants relief and is entitled to it.'" *Twombly*, 550 U.S. at 555 n.3

(citing 5 Wright & Miller § 1202, at 94, 95) (internal punctuation marks omitted).

To allege a claim under 42 U.S.C. § 1983 for failure to intervene, a plaintiff must allege

facts showing that the defendant officer "had a realistic opportunity to intervene to prevent harm

from occurring." *Savannah v. Collins*, 547 Fed. Appx. 874, 876 (10th Cir. 2013) (citations

omitted). Without allegations that a defendant officer *could* have stopped an unconstitutional use

of force, and had the ability to do so under the circumstances but did not, a plaintiff's failure-to-

intervene claim cannot overcome a 12(b)(6) motion to dismiss. *Id.* In *Savannah*, the plaintiff

alleged that the defendant law enforcement officer unconstitutionally failed to prevent another

officer's K9, "Zorro," from biting the plaintiff. *Id.* at 874. The district court denied the officer's

12(b)(6) motion to dismiss, but the Tenth Circuit reversed, explaining:

> The factual assertions do not plausibly suggest that Officer Collins had a realistic
> opportunity to intervene. Although [the plaintiff] Mr. Savannah asserts that Officer
> Collins could have stopped Zorro, he does not assert that Officer Collins could have
> stopped Zorro. Officer Collins did not deploy Zorro and there is no assertion that
> he had the ability to control the dog. Thus, Mr. Savannah only concludes, without
> factual support, that Officer Collins could have intervened during the attack by
> Zorro.
>
> *Id.* at 876.

As it was in *Savannah*, so it is here. Plaintiff fails to provide any factual support for the

conclusory and vague statements that Sergeant Gustin "directly approv[ed] of" and "let[] Deputy

Sander's an K-9 Ox assault me." *See* Pl. Prisoner Compl., p. 5. Such conclusory statements must

be disregarded. *Iqbal*, 556 U.S. at 678. Furthermore, Plaintiff's Prisoner Complaint contains no

facts regarding Sergeant Gustin's personal conduct. Plaintiff fails to set forth any factual

allegations regarding what Sergeant Gustin saw, heard, or observed; when he saw, heard, or observed it; where Sergeant Gustin was located in relation to the alleged assault; whether Sergeant Gustin had the ability to control "K-9 Deputy Ox"; or any facts indicating Sergeant Gustin otherwise had a realistic opportunity to intervene. The complete absence of any factual allegations means that Plaintiff fails to state a claim for a failure to intervene, or for any constitutional violation, by Sergeant Gustin. Without factual allegations that Sergeant Gustin committed a constitutional violation, Plaintiff's Prisoner Complaint fails to state a claim for relief, and must be dismissed as to Sergeant Gustin pursuant to Fed. R. Civ. P. 12(b)(6).

**B. Plaintiff's Complaint Fails to State a Claim Against the Montrose County Sheriff's Office.**

Plaintiff's Prisoner Complaint indicates that Plaintiff is suing Defendant Gustin in his official capacity. Pl. Compl. [ECF #1], p. 3. A suit against a law enforcement officer in his official capacity is equivalent to an action against the government entity for whom the officer works. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Thus, Plaintiff's assertion of "official capacity" claims against Sergeant Gustin is equivalent to a suit against the Montrose County Sheriff's Office ("MCSO").

Plaintiff's Prisoner Complaint contains no allegations to support a claim against the MCSO. To allege a claim under 42 U.S.C. § 1983 against a municipal entity such as MCSO, Plaintiff is required, at a minimum, to allege facts showing: (1) the existence of an MCSO policy or custom; and (2) a direct causal link between the MCSO policy or custom and Plaintiff's alleged constitutional deprivation. *Bauer v. City and Cnty. of Denver*, 642 Fed. Appx. 920, 923 (10th Cir. 2016) (citations omitted) (affirming dismissal of the plaintiff's complaint for failure to state a claim against the City and County of Denver). Plaintiff's Prisoner Complaint [ECF #1] does not set forth

6

any allegations, conclusory or otherwise, that an MCSO policy or custom caused, or was a "moving force" of the alleged constitutional violation. Furthermore, MCSO liability cannot be premised upon a theory of vicarious liability. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013). That is, even if the actions of an MCSO officer "inflicted an injury" upon Plaintiff—which did not occur—MCSO cannot be held liable "solely for the actions of its employee." *Id.* The total absence of any allegations relating to the elements of municipal liability means that Plaintiff's "official capacity" claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    CONCLUSION

Plaintiff has failed to state a claim on which relief can be granted. The conclusory statements in Plaintiff's Prisoner Complaint [ECF #1] are insufficient to allege that Sergeant Gustin violated Plaintiff's constitutional rights. Plaintiff thus fails to plead facts to overcome Sergeant Gustin's qualified immunity. Additionally, Plaintiff fails to allege facts to state a plausible claim for relief against Sergeant Gustin in his official capacity. Therefore, Defendant Gustin respectfully requests that the Court grant this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), dismiss all claims against Sergeant Gustin, and enter judgment in Sergeant Gustin's favor.

**DATED** this 4th day of March, 2019.

Respectfully Submitted,

*/s/ Andrew R. McLetchie*
Andrew R. McLetchie, Atty. No. 34035
Eden R. Rolland, Atty. No. 48877
Fowler, Schimberg, Flanagan & McLetchie, PC
350 Indiana Street, Suite 850

Golden, Colorado 80401
Telephone: 303-298-8603
Fax: 303-298-8748
A_McLetchie@fsf-law.com
E_Rolland@fsf-law.com
*Attorney for Sgt. Keith Sanders and Sgt. Steve Gustin*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of March, 2019, I electronically filed the foregoing **DEFENDANT GUSTIN'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** with the Clerk of Court using the CM/ECF system, as well as by U.S. Mail to Plaintiff at the following address:

Eric Tyler Vette, *Pro Se*
DOC #180289
Crowley County Correctional Facility (CCCF)
P.O. Box 100
Olney Springs, CO 81062

*/s/ Jill Ribera*
Jill Ribera

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01987-KMT

ERIC TYLER VETTE

      Plaintiff,

v.

K-9 UNIT DEPUTY SANDERS
SERGEANT GUSTON
K-9 DEPUTY OX

      Defendants.

---

**DEFENDANT SANDERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.**
**12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FED. R. CIV. P. 56**

---

      Sergeant Keith Sanders (incorrectly captioned as "K-9 UNIT DEPUTY SANDERS")

("Defendant"), by and through his attorney Andrew R. McLetchie of Fowler, Schimberg, Flanagan

& McLetchie, P.C., hereby submits the following Motion to Dismiss Pursuant to Fed. R. Civ. P.

12(b)(6) Or, In The Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. In

support thereof, this Defendant states as follows:

**<u>Certification Pursuant to D.C.COLO.LCivR 7.1</u>**

      In accordance with D.C.COLO.LCivR 7.1(b), undersigned counsel has not conferred with

Plaintiff because Plaintiff proceeds *pro se* and is currently incarcerated.

**I.       INTRODUCTION**

      On December 31, 2017, Plaintiff fled from law enforcement officers in his vehicle,

recklessly engaging them in a dangerous pursuit in and around downtown Montrose, Colorado, at times driving at speeds exceeding 100 miles per hour. Plaintiff was stopped and apprehended only after officers succeeded in safely diverting Plaintiff's vehicle from the road and into an open field. After coming to a stop, Plaintiff continued to attempt to evade officers by running across the field. He was overtaken by officers and placed under arrest on thirteen separate charges, including felony charges for vehicular eluding, identity theft, and unlawful possession of a controlled substance, with officers having found cocaine and numerous unauthorized prescription medications inside Plaintiff's vehicle.

Plaintiff's claim against Sergeant Sanders stems from a discrete incident that allegedly transpired during Plaintiff's arrest. Specifically, Plaintiff alleges that after he had been apprehended by officers, he was 'bitten' by a K-9 unit—a dog that Plaintiff refers to as "K-9 Deputy Ox."[1] The allegations in Plaintiff's Prisoner Complaint [ECF #1] are insufficient to state a claim for relief against Defendant Sanders. There are no factual allegations to indicate that Sergeant Sanders' alleged use of force was objectively unreasonable, nor are there any factual allegations that Oxx's fleeting engagement of Plaintiff was intentional or excessive. Moreover, Sergeant Sanders fully, contemporaneously, and in detail documented the extent of his conduct and what occurred with "K-9 Deputy Ox" in his Supplemental Narrative Report pertaining to Plaintiff's flight and arrest.[2] That Report is devoid of any facts upon which a plausible claim for

---

[1] Sergeant Sanders and Sergeant Gustin have contemporaneously filed a Motion to Strike Pursuant to Fed. R. Civ. P. 12(f), which moves the Court to strike "K-9 Deputy Ox" from Plaintiff's Prisoner Complaint as a Defendant in this action. "K-9 Deputy Ox" will also be referred to herein as "Oxx," which is the name that officers call him.

[2] Sergeant Sanders' Supplemental Narrative Report is set forth in the attached Montrose County Sheriff's Office "Incident Report," attached hereto as **Exhibit A**. As set forth in greater detail in the "Standard of Review" section, the Court may consider the Incident Report as a matter of public

relief against Sergeant Sanders may be based. Because Plaintiff's Prisoner Complaint fails to set forth any facts upon which he can show Sergeant Sanders committed a constitutional violation, Plaintiff fails to overcome Defendant Sanders' qualified immunity. Plaintiff's claim against Defendant Sanders should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, if the Court converts this Motion into one for summary judgment, the Court should enter summary judgment pursuant to Fed. R. Civ. P. 56 in Defendant Sanders' favor.

## II.       STANDARD OF REVIEW

### Motion to Dismiss under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To do so does not require detailed factual allegations, but it does demand more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor can a complaint withstand a motion to dismiss if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a motion to dismiss under Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

record without converting this Motion into one for summary judgment. *See e.g. Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## Consideration of Documents Outside the Pleadings

Generally, a court does not look beyond the contents of the complaint when ruling on a Rule 12(b)(6) motion to dismiss. *Chavez v. Ariz. Auto. Ins. Co.*, 2018 WL 2220279, at *3 (D. Colo. 2018) (citation omitted). However, the Court may consider in a Rule 12(b)(6) motion "facts subject to judicial notice . . . without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). This allows the Court to "'take judicial notice of its own files and records, as well as facts which are a matter of public record.'" *Id.* (citation omitted). The Court may also take judicial notice of materials in a related court case without converting the motion to dismiss into one for summary judgment. *Welch v. Saunders*, 2016 WL 8577463, at *2 n.1 (D. Colo. 2016) (citing *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008)). These documents "may only be considered to show their contents, not to prove the truth of the matters asserted therein." *Tal*, 453 F.3d at 1264 n.24 (citation omitted). The Court has "'broad discretion in determining whether or not to accept materials beyond the pleadings.'" *Chavez*, 2018 WL 2220279, at *3. "The mere fact that the parties provide[] documents to this Court does not require the Court to rely on those documents." *Id.* (citation omitted). "Thus, the Court 'has discretion in deciding whether to convert a motion to dismiss into a motion for summary judgment by accepting or rejecting the attached documents.'" *Id.* (citation omitted).

## Motion for Summary Judgment under Rule 56

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not a "'disfavored procedural shortcut,'" but rather "an important procedure 'designed to secure the just, speedy, and inexpensive determination of every

4

action.'" *Doshay v. Global Credit Collection Corp.*, 796 F.Supp.2d 1301, 1303 (D. Colo. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). In moving for summary judgment, the moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Where the moving party does not bear the ultimate burden of persuasion at trial, it is not the moving party's responsibility to disprove the other party's claim. *Id.* at 671. Rather, the movant may satisfy its prima facie burden by simply pointing out to the Court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *Id.* Once the movant has done so, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). The nonmoving party cannot meet this burden simply by resting upon his pleadings. *Id.* Instead, the nonmoving party must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence at trial "from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671.

### III.    ARGUMENT

**A. Sergeant Sanders Is Entitled to Qualified Immunity.**

At all times relevant to Plaintiff's claims, Sergeant Sanders was acting pursuant to his law enforcement duties as an officer of the Montrose County Sheriff's Office. As such, he is entitled to qualified immunity, which protects him "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. The City of Colo. Springs*, 709 Fed. Appx. 906, 913 (10th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is more than a defense

to liability; it is immunity from suit. *See id.* at 913; *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985)). To overcome Sergeant Sanders' qualified immunity, Plaintiff must satisfy "a heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). First, Plaintiff must demonstrate that Sergeant Sanders' individual actions violated Plaintiff's constitutional rights. *Id.* Second, Plaintiff must show that the constitutional right allegedly violated was "clearly established" at the time of Sergeant Sanders' conduct on December 31, 2017. *Id.*

Plaintiff's Prisoner Complaint fails to overcome Sergeant Sanders' qualified immunity on both prongs. First, Plaintiff's Prisoner Complaint does not sufficiently allege facts indicating a constitutional violation occurred. Plaintiff's sparse and conclusory allegations do not provide any factual information regarding the alleged "assault." There are no allegations that Sergeant Sanders directed Oxx to bite Plaintiff, or that Sergeant Sanders allowed Oxx to engage Plaintiff for an excessive amount of time. Neither of these occurred. Furthermore, taking judicial notice of the Incident Report of Plaintiff's arrest, there are no facts in that Report to support the notion that Sergeant Sanders violated Plaintiff's constitutional right to be free from excessive force. Because he is immune from suit, Sergeant Sanders should not be burdened with the uncertainty and expense of discovery and further litigation. *See Mitchell*, 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Second, to the extent Plaintiff alleges Sergeant Sanders dispatched Oxx to bite Plaintiff, such a right is not clearly established given the circumstances of Plaintiff's felonies and dangerous flight from arrest. Accordingly, the Court should dismiss Plaintiff's claims against Sergeant Sanders pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, if the Court should determine that considering the attached Incident Report

requires converting this Motion into a Motion for Summary Judgment, judgment should be entered in Sergeant Sanders' favor pursuant to Fed. R. Civ. P. 56.

### 1. Plaintiff Fails to Allege a Constitutional Violation by Sergeant Sanders.

Plaintiff fails to state a claim for relief against Sergeant Sanders in his individual capacity. To state a claim of excessive force under the Fourth Amendment,[3] Plaintiff must allege sufficient factual material to show he was "seized," and that the alleged use of force was not objectively reasonable. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). A "seizure" in violation of the Fourth Amendment "requires an *intentional* acquisition of physical control." *Gurule v. Ambuehl*, 2018 WL 1384464, at *3 (D. Colo. 2018) (Slip copy) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)) (emphasis added). In addition to sufficiently alleging that a "seizure" occurred, Plaintiff must sufficiently allege the seizure was not objectively reasonable "from the perspective of a reasonable officer on the scene." *Marquez*, 399 F.3d at 1220 (citation omitted). The objective reasonableness standard requires the Court to "pay[] careful attention to Plaintiff's allegations" in the context of: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Gurule*, 2018 WL 1384464, at *4 (citing *Graham*, 490 U.S. at 396).

Plaintiff's Prisoner Complaint [ECF #1] fails to allege a Fourth Amendment violation. The entirety of Plaintiff's claim against Sergeant Sanders reads as follows:

> Deputy Sanders violated my constitutional rights Amendments 8 and 14 by, Police Brutality and using over excessive force when date of arrest due to Sanders punching, hitting with dog chain in face and letting dog attack me after I was

---

[3] Plaintiff's Prisoner Complaint incorrectly asserts his claims under the Eighth and Fourteenth Amendments. *See* Pl. Prisoner Compl. [ECF #1], p. 4.

already Aprehended by two sheriff's. There's no reason why I was getting assaulted by deputy Sanders an Ox while after being aprehended. This insodent hurt me and physically, emotionally, mentalally. [Sic.]

Pl. Prisoner Compl. [ECF #1] at p. 4.

Ignoring Plaintiff's conclusory allegations, as the Court must, the only "factual" allegations that appear in Plaintiff's Prisoner Complaint with respect to Sergeant Sanders are: "punching, hitting with dog chain in face and letting dog attack me after I was already aprehended by two sheriff's." *Id.* These statements, devoid of further factual detail, and also viewed in the context of the facts set forth in Sergeant Sanders' Supplemental Narrative Report, are insufficient to state a claim for relief against Sergeant Sanders. *See* Montrose County Sheriff's Office "Incident Report," attached as **Exhibit A**, at pp. 7-8 (Supplemental Narrative Report by Sergeant Sanders). The attached Supplemental Narrative Report by Sergeant Sanders, as it relates to the alleged "attack," states in full as follows:

Upon my [Sergeant Sanders'] arrival to the scene, the suspect, Eric Tyler Vette . . . exited the vehicle and began to flee on foot in an eastward direction. I continued to drive along the field and then came up the east side of the field. I seen [sic] Deputy Gustin in his patrol vehicle, with lights and siren still activated, chasing the suspect. I then exited my patrol unit and retrieved K9 Oxx and put him on lead. I heard Deputy Gustin issuing verbal commands to the suspect. I advised Deputy Gustin to hold his position until I got there with K9 Oxx for officer safety reasons. Upon my approach to the suspect and Deputy Gustin, K9 Oxx's collar came unlatched and K9 Oxx attempted to bite the suspect. I immediately grabbed K9 Oxx by the neck and prevented him from engaging the suspect further. I then reattached the collar to K9 Oxx and placed him in a down position. I then recognized the suspect as Eric Tyler Vette. I checked Eric's right shoulder where K9 Oxx made contact with him and observed some abrasions and scratches, but no broken skin.

**Exhibit A**, "Incident Report," p. 7.

The above description is a complete, true and accurate record of Sergeant Sanders' and Oxx's interactions with Plaintiff. *See* Affidavit of Sanders, attached as **Exhibit B**, at ¶¶ 6-7, 12. Sergeant Sanders documented the extent of his or K-9 Oxx's use of force upon Plaintiff. *Id.* at ¶¶

8

12-13. Sergeant Sanders created his report as soon as practicable after the incident occurred, and recorded the facts and details regarding the encounter thoroughly and accurately. *Id.* at ¶¶ 10-12. If either Sergeant Sanders or K-9 Oxx had used force, Sergeant Sanders would have documented it. *See id.* at ¶¶ 11-13. Indeed, Sergeant Sanders recorded K-9 Oxx's attempt to bite Plaintiff, and how he prevented K-9 Oxx from engaging with Plaintiff further. *Id.* at ¶ 12; **Ex. A** at p. 7.

The Court may consider the Incident Report, including Sergeant Sanders' Supplemental Narrative Report, taking judicial notice of the facts therein, without converting this Motion to a motion for summary judgment, because the Incident Report is a public record. *See Tal*, 453 F.3d at 1264 n.24; *Chavez*, 2018 WL 2220279, at *3. The Incident Report is an admissible "public record," as defined by the Federal Rules of Evidence, because it sets out "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii); *Barrientos-Sanabria v. Holte*, 2012 WL 6107904, at *5 (D. Colo. 2012) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162, 170 (1988)) ("Investigative reports that contain an investigator's factual findings, including factually based conclusions or opinions, are admissible under this rule [Fed. R. Evid. 803(8)] as an exception to the hearsay rule."). The Incident Report also bears the hallmarks of trustworthiness, as required by Fed. R. Evid. 803(8)(B), because it is detailed, specific, internally consistent, and Sergeants Sanders and Gustin documented their narratives shortly after the incident occurred, when there would have been no motivation to alter or fabricate the information in their statements. *See* **Ex. A** at p. 4 (narrative by Sergeant Gustin date and time stamped 12/31/17 at "approximately 0023 hours"); *id.* at p. 7 (narrative by Sergeant Sanders time and date stamped 17:58:21, 12/31/17); *Perrin v. Anderson*, 784 F.2d 1040, 1047 (10th Cir. 1986) (articulating factors of a document's trustworthiness).

Nothing in Plaintiff's Prisoner Complaint or the Incident Report suggests that Plaintiff was "seized" by "K-9 Deputy Ox." Rather, as the Incident Report shows, "K-9 Deputy Ox's" engagement with Plaintiff was inadvertent and resulted in nothing more than "some abrasions and scratches, but no broken skin." Ex. A at p. 7. There is no factual basis for construing Plaintiff's sparse allegations as stating that the alleged "dog attack" was intentional. There are no allegations that Sergeant Sanders ordered Oxx to engage Plaintiff, or that Sergeant Sanders intentionally released and dispatched Oxx to bite Plaintiff. *See* Pl. Prisoner Compl. [ECF #1], p. 4. *See Gurule*, 2018 WL 1384464, at *4 (analyzing the sufficiency of plaintiff's alleged excessive force claim arising from a police dog bite on the premise the defendants intentionally "dispatched" the dog onto the plaintiff); *see also Savannah v. Collins*, 547 Fed. Appx. 874, 875 (10th Cir. 2013) (reversing denial of 12(b)(6) dismissal for second officer in failure-to-intervene claim, which had been alleged on the premise that first officer "deployed" police dog). That Oxx's collar would somehow become unlatched and Oxx would attempt to bite Plaintiff was unforeseeable. *See* Ex. A, at p. 7. Nor are there any allegations that, after Oxx became loose, Sergeant Sanders lingered and allowed Oxx to engage with Plaintiff for "an extended duration." *See Gurule*, 2018 WL 1384464, at *8 (recognizing that a dispatched dog bite of "extended duration" may rise "to the level of a constitutional violation"). To the contrary, Sergeant Sanders "immediately grabbed K9 Oxx by the neck and prevented him from engaging [Plaintiff] further." Ex. A, at p. 7. After the incident, Plaintiff was medically checked, first by EMS officials who were at the scene, and then immediately thereafter at Montrose Memorial Hospital. *Id.* at p. 6 (report by Sergeant Gustin, documenting Plaintiff's check by EMS and Sergeant Gustin's transporting Plaintiff to the Hospital for medical clearance); *id.* at pp. 7-8 (report by Sergeant Sanders, documenting the same). Plaintiff

was medically cleared, and the Incident Report contains no record of complaints or medical problems relating to a dog bite. *See id.* In fact, the primary, if not only, medical concern was Plaintiff's presentation of visible signs of a "possible drug overdose." *See id.* at pp. 6, 8. The alleged incident, at most, amounts to K9 Oxx "attempting" to bite Plaintiff, but being immediately restrained and prevented from doing so by Sergeant Sanders. *Id.* at p. 7. Plaintiff's Prisoner Complaint contains no facts to support the idea that Plaintiff was intentionally "seized" by Oxx in violation of the Fourth Amendment. This requires dismissal under Fed. R. Civ. P. 12(b)(6).

If the Court should construe Plaintiff's Prisoner Complaint as sufficiently alleging facts that Oxx's engagement with Plaintiff was "force," there is nonetheless no basis for concluding that this force was objectively unreasonable under the circumstances. Considering the *Graham* factors, Sergeant Sanders arrived at the scene knowing Plaintiff was a "wanted felon." *See* Ex. A, at p. 7. Officers had initially attempted to stop Plaintiff after running his license plate and finding he had three outstanding warrants for his arrest—one for a misdemeanor and two for felony offenses.[4] *Id.* at p. 5 (narrative by arresting officer, Sergeant Gustin). Instead of yielding, Plaintiff sped off in his vehicle, engaging officers in a circuitous and dangerous high-speed chase around downtown Montrose, with Plaintiff at times exceeding speeds of 60, 80, and 100 miles per hour. *See id.* Plaintiff did not stop until an officer performed a Tactical Vehicle Intervention ("TVI") maneuver to bring Plaintiff's vehicle to rest in an open field. *Id.* at p. 7. Even then Plaintiff did not stop, but

---

[4] Prior to his arrest on December 31, 2017, Plaintiff pled guilty to second degree assault, with serious bodily injury and with an underlying sexual factual basis, in violation of C.R.S. § 18-3-203(1)(g). *See People v. Vette*, Case No. 15CR270 (District Court of Montrose County). The state district court entered his plea agreement on August 2, 2017. *See id.* Plaintiff was sentenced on April 12, 2018, for crimes prosecuted in Case No. 15CR270 and Case No. 18CR2. The Court may take judicial notice of Plaintiff's criminal convictions. *See Welch*, 2016 WL 8577463, at *2 n.1.

instead attempted to run away from officers across the field. *Id.* It was approximately at this point that Sergeant Sanders and Oxx arrived at the scene. Sergeant Sanders maintains he did not use any force and that Oxx did not "attack" Plaintiff. *See* Ex. B at ¶¶ 12-13. But, even if force had been used as Plaintiff alleges, Plaintiff's felony history and his dangerous flight from arrest demonstrate that the alleged force used was reasonable under the circumstances. *See e.g. Marquez*, 399 F.3d at 1221 (deployment of police dog in the face of two fleeing robbery suspects following a high-speed car chase was reasonable); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1317 (10th Cir. 2009) (release of police dog on a potentially armed suspect who had made threatening statements and fled his home at night in a residential neighborhood was reasonable). Given Plaintiff's paltry allegations of force and the circumstances of Plaintiff's flight and arrest, Plaintiff fails to allege facts showing a Fourth Amendment violation for use of "excessive" force, requiring dismissal under Fed. R. Civ. P. 12(b)(6).

If the Court determines that considering the Incident Report requires converting this Motion into a Motion for Summary Judgment, the Court should do so, and examine the Incident Report pursuant to Rule 56 standards. In doing so, the Court will be able to conclude that there is no evidence by which Plaintiff can establish that Sergeant Sanders used excessive force or otherwise violated Plaintiff's constitutional rights in any way.

In sum, stripping Plaintiff's Prisoner Complaint of conclusory allegations and taking judicial notice of the facts set forth in the Incident Report and Sergeant Sanders' Supplemental Narrative Report, Plaintiff fails to sufficiently allege that Sergeant Sanders violated Plaintiff's constitutional rights, so as to defeat Sergeant Sanders' qualified immunity. Accordingly, Plaintiff's claim against Sergeant Sanders must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the

alternative, Sergeant Sanders is entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

### 2. Plaintiff's Alleged Right is Not "Clearly Established."

The second prong of the qualified immunity test requires the constitutional right at issue to be "clearly established" at the time of the conduct alleged. *See Brown*, 709 Fed. Appx. at 913-14. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gurule*, 2018 WL 1384464, at *6 (citations omitted). The contours of the right "must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Id.* at *7 (citation omitted). As articulated in *Gurule*, the U.S. District Court of Colorado could not find that "by 2015, the law in this Circuit was clearly established that an officer applies excessive force by dispatching a canine to apprehend a person for whom the officer has an arrest warrant and who had demonstrated an inclination to flee and evade arrest." *Id.* Undersigned counsel extended the search for such case law through December 31, 2017, and was unable to find any. Moreover, the right at issue in this case is defined by an *unintentional* deployment of a canine when effecting an arrest, a proposition that has not been addressed by the U.S. Supreme Court or Tenth Circuit. Consequently, the particular right that Plaintiff claims was allegedly violated is not "clearly established." Plaintiff cannot overcome Sergeant Sanders' qualified immunity, and Plaintiff's claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff's Complaint Fails to State a Claim Against the Montrose County Sheriff's Office.

Plaintiff's Prisoner Complaint indicates that Plaintiff is suing Defendant Sanders in his official capacity. Pl. Compl. [ECF #1], p. 2. A suit against a law enforcement officer in his official

capacity is equivalent to an action against the government entity for whom the officer works. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Thus, Plaintiff's assertion of "official capacity" claims against Sergeant Sanders is equivalent to a suit against the Montrose County Sheriff's Office ("MCSO").

Plaintiff's Prisoner Complaint contains <u>no</u> allegations to support a claim against the MCSO. To allege a claim under 42 U.S.C. § 1983 against a municipal entity such as MCSO, Plaintiff is required, at a minimum, to allege facts showing: (1) the existence of an MCSO policy or custom; and (2) a direct causal link between the MCSO policy or custom and Plaintiff's alleged constitutional deprivation. *Bauer v. City and Cnty. of Denver*, 642 Fed. Appx. 920, 923 (10th Cir. 2016) (citations omitted) (affirming dismissal of the plaintiff's complaint for failure to state a claim against the City and County of Denver). Plaintiff's Prisoner Complaint [ECF #1] does not set forth any allegations, conclusory or otherwise, that an MCSO policy or custom caused, or was a "moving force" of the alleged constitutional violation. Furthermore, MCSO liability cannot be premised upon a theory of vicarious liability. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013). That is, even if the actions of an MCSO officer "inflicted an injury" upon Plaintiff—which did not occur—MCSO cannot be held liable "solely for the actions of its employee." *Id.* The total absence of any allegations relating to the elements of municipal liability means that Plaintiff's "official capacity" claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    CONCLUSION

Plaintiff has failed to state a claim on which relief can be granted. The allegations in Plaintiff's Prisoner Complaint [ECF #1] are insufficient to allege that Sergeant Sanders' conduct

resulted in a violation of Plaintiff's constitutional rights. Further, the facts recorded in the Montrose County Sheriff's Office Incident Report regarding the incident—a public record of which the Court may take judicial notice—do not reveal any indication a constitutional violation occurred. Nor has the alleged right been clearly established. Thus, Plaintiff fails to plead facts to overcome Sergeant Sanders' qualified immunity. Additionally, Plaintiff fails to allege facts to state a plausible claim for relief against Sergeant Sanders in his official capacity. Therefore, Defendant Sanders respectfully requests that the Court dismiss all of Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Defendant Sanders requests that the Court construe this as a Motion for Summary Judgment and enter summary judgment in Defendant Sanders' favor pursuant to Fed. R. Civ. P. 56.

**DATED** this 4th day of March, 2019.

Respectfully Submitted,

*/s/ Andrew R. McLetchie*
Andrew R. McLetchie, Atty. No. 34035
Eden R. Rolland, Atty. No. 48877
Fowler, Schimberg, Flanagan & McLetchie, PC
350 Indiana Street, Suite 850
Golden, Colorado 80401
Telephone: 303-298-8603
Fax: 303-298-8748
A_McLetchie@fsf-law.com
E_Rolland@fsf-law.com
*Attorney for Sgt. Keith Sanders and Sgt. Steve Gustin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2019, I electronically filed the foregoing **DEFENDANT SANDERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** with the Clerk of Court using the CM/ECF system, as well as by U.S. Mail to Plaintiff at the following address:

Eric Tyler Vette, *Pro Se*
DOC #180289
Crowley County Correctional Facility (CCCF)
P.O. Box 100
Olney Springs, CO 81062

*/s/ Jill Ribera*
Jill Ribera

```
02/13/19                  MONTROSE COUNTY SHERIFF'S OFFICE                    1066
16:35                     LAW Incident Table:                     Page:    1

    Incident
  Incident Number   S17-17524    Nature    DUI
    Case Number                                     Image
          Address?  S PARK AVE / S 1ST ST
            City    Montrose          State   CO    ZIP
            Area    20    Montrose City          Contact

    Complainant
  Numbr          19200
    Last   STATE OF COLORADO          Fst                 Mid
    DOB     /  /     SSN       -  -   Adr
    Race    Sx   Tel (    )   -       Cty              ST       ZIP

    Details
    Statute Codes
    Offense Codes   DUID DCOP RECK RIPO CONC     Reported  TOFF  Observed   DUID
    Circumstances   LT13  ASI   DC    DRUG  K9
  Rspndg Officers  Steve Gustin       Dustin Horn     Keith Sanders      ?
  Rspnsbl Officer  Steve Gustin    Agency   MONS        CAD Call ID   1072293
    Received By    Kari McClanahan         Last RadLog  07:21:43 12/31/17    CMPLT
    How Received   O  Officer Report        Clearance   CRO  CLEARED RESPONDING OF
    When Reported  00:23:23 12/31/17     Disposition   CLO  Disp Date  04/12/18
  Occurrd between  00:23:19 12/31/17     Judicial Sts  CLOS Judicial Closed
            and    00:23:19 12/31/17     Misc Entry    Case File
            MO

    Narrative
    Narrative     (See below)
    Supplement    (See below)                    (See below)                    ?

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

  INVOLVEMENTS:
  Type   Record #   Date      Description                    Relationship
  NM     19200       /  /     STATE OF COLORADO,            *Complainant
  NM     120536      /  /     VETTE, ERIC TYLER            Offender
  NM     239710      /  /     GOSSETT, GABRIEL JOSEPH      Involved
  NM     240413      /  /     HAGER, AMY                   Involved
  NM     240414      /  /     HURTADO, AMY A               Involved
  OF     180317    12/31/17   DUI                          *Charged With
  VH     100839      /  /     GRN/GRN 1996 HOND CIVIC CO   Impounded/Released
  CA     1072293   12/31/17   00:23 12/31/17 Traffic Offense *Initiating Call
  PR     25092S      /  /     Blood Kit   $0               Evidence
  PR     25093S      /  /     Paraphernalia Bottles   $0   Evidence
  PR     25094S      /  /     Paraphernalia Bottle   $0    Evidence
  PR     25095S      /  /     BLK Wallet   $0              Evidence
  PR     25096S      /  /     Credit Card VISA Amy Hager   $0  Evidence
```

Defendant's Exhibit A
Incident Report

```
PR       25097S      /  /     Credit Card VISA Amy Hurtad $0    Evidence
PR       25098S      /  /     Credit Card 2 H&R Block   $0      Evidence
PR       25099S      /  /     Cocaine   $0                      Evidence
PR       25100S      /  /     Drug Various  $0                  Evidence
PR       25101S      /  /     RED Drug Various  $0              Evidence
PR       25102S      /  /     Weapon Wooden Club  $0            Evidence
PR       25103S      /  /     Identification Drivers Lice $0    Stolen/Recovered Pro
EV   000007163       /  /     Drug Bottles                    *Evidence Incident
EV   000007164       /  /     Pill bottle                     *Evidence Incident
EV   000007165       /  /     Wallet                          *Evidence Incident
EV   000007166       /  /     Credit Card                     *Evidence Incident
EV   000007167       /  /     Credit Card                     *Evidence Incident
EV   000007168       /  /     Credit Card                     *Evidence Incident
EV   000007169       /  /     Cocaine                         *Evidence Incident
EV   000007170       /  /     Pills                           *Evidence Incident
EV   000007171       /  /     Drugs                           *Evidence Incident
EV   000007172       /  /     Wooden Club                     *Evidence Incident
EV   000007143       /  /     Blood Kit                       *Evidence Incident
```

LAW Incident Offenses Detail:
```
                    Offense Codes
Seq Code                                    Amount
  1 DUID Driving Under Influence Drugs        0.00
  2 DCOP Drug Cocaine Possess                 0.00
  3 RECK RECKLESS ENDANGERMENT                0.00
  4 RIPO Resisting/Interfering w/Police       0.00
  5 CONC Contempt of Court                    0.00
```

LAW Incident Circumstances:
```
                Contributing Circumstances
Seq Code                               Comments
  1 LT13  Highway/Road/Alley
  2 ASI   ADULT SUMMONS ISSUED
  3 DC    Definable Crime
  4 DRUG  Drugs Involved
  5 K9    K-9 CALLOUT
```

LAW Incident Responders Detail
```
    Responding Officers
Seq Name              Unit
  1 Steve Gustin      MC28
  2 Dustin Horn       MC30
  3 Keith Sanders     MC5
  4 Jason Grundy      MC16
  5 Jamie Heinle      MC14
```

Main Radio Log Table:
```
Time/Date            Typ Unit   Code   Zone   Agnc Description
07:21:43 12/31/17     1   MC14   CMPLT  MONS   MONS incid#=S17-17524 Completed cal
07:21:43 12/31/17     1   MC16   CMPLT  MONS   MONS incid#=S17-17524 Completed cal
07:21:35 12/31/17     1   MC14   ARRVD  MONS   MONS incid#=S17-17524 cjc em 32714.
```

Defendant's Exhibit A
Incident Report

```
Time/Date              Typ Unit   Code  Zone  Agnc Description
07:08:15 12/31/17       1   MC14   ARRVD MONS  MONS incid#=S17-17524 cjc call=1l
07:08:15 12/31/17       1   MC16   ARRVD MONS  MONS incid#=S17-17524 cjc call=1l
07:03:43 12/31/17       1   MC14   ENRT  MONS  MONS incid#=S17-17524 cjc bm 32712.
07:03:31 12/31/17       1   MC14   ASSGN MONS  MONS incid#=S17-17524 Assigned to a
06:59:52 12/31/17       1   MC16   ENRT  MONS  MONS incid#=S17-17524 cjc call=1l
05:57:24 12/31/17       1   MC30   CMPLT MONS  MONS incid#=S17-17524 Completed cal
05:53:44 12/31/17       1   MC16   ARRVD MONS  MONS incid#=S17-17524 MMH call=1l
05:46:14 12/31/17       1   MC16   ENRT  MONS  MONS incid#=S17-17524 Enroute to a
02:22:15 12/31/17       1   MC28   CMPLT MONS  MONS incid#=S17-17524 Reassigned to
02:19:56 12/31/17       1   MC28   ENRT  MONS  MONS incid#=S17-17524 to mcso, pape
02:16:00 12/31/17       1   MC30   ARRVD MONS  MONS (MDC) Arrived on scene incid#=
02:06:01 12/31/17       1   MC5    CMPLT MONS  MONS incid#=S17-17524 Completed cal
01:47:09 12/31/17       1   MC30   ENRT  MONS  MONS incid#=S17-17524 following D&G
01:21:04 12/31/17       1   MC28   ARRVD MONS  MONS incid#=S17-17524 at mmh clr:RT
01:14:01 12/31/17       1   MC28   ENRT  MONS  MONS incid#=S17-17524 to mmh for cl
00:35:41 12/31/17       1   MC28   95    MONS  MONS incid#=S17-17524 Subject in Cu
00:35:41 12/31/17       1   MC30   95    MONS  MONS incid#=S17-17524 Subject in Cu
00:35:41 12/31/17       1   MC5    95    MONS  MONS incid#=S17-17524 Subject in Cu
00:35:34 12/31/17       1   MC5    95    MONS  MONS incid#=S17-17524 Subject in Cu
00:35:27 12/31/17       1   MC5    ARRVD MONS  MONS incid#=S17-17524 marine /lasal
00:24:26 12/31/17       1   MC5    ENRT  MONS  MONS incid#=S17-17524 Enroute to a
00:24:04 12/31/17       1   MC30   ENRT  MONS  MONS incid#=S17-17524 Enroute to a
00:23:25 12/31/17       1   MC28   ARRVD MONS  MONS incid#=S17-17524 On-site call=
```

Defendant's Exhibit A
Incident Report

Narrative:

S17-17524              Deputy S. Gustin                Date 12-31-17

Incident:              Traffic Offense

Location:              South Park Avenue and South First Street,
                       Montrose County, Colorado

Date/Time:             12-31-17 at approximately 0023 hours

Reporting Party(s):    State of Colorado
                       Montrose County


Victim(s):             State of Colorado

Suspect(s):            Eric Tyler Vette
                       DOB: 05-04-92
                       1600 North Eagle Street,
                       Delta CO 81416

Charges:               1. Vehicular Eluding     18-9-116.5 (1)(2)(a)     5F

                       2. Identity Theft         18-5-902(1)(b)          4F

                       3. Unlawful Possession of controlled substance
                             18-18-403.5 DF4

                       4. DUID          42-4-1301(1)(a)  M

                       5. Obstruction Government Operations
                             18-8-104(1)(a)(b)

                       6.Reckless Endangerment          18-3-208          3M

                       7. Authorized Possession of Controlled Substance
                             18-18-413

                       8. Resisting Arrest     18-8-103(1)(b)   2M

                       9. Drove Vehicle When License Revoked   42-2-138(1)(a)

                       10.  Protection order violation   18-6-803.5    M

                       11.  Reckless Driving    42-4-1401(1)     MT2

                       12.  Speeding    42-4-1101 (1)    MT2

                       13. Disregarded Traffic Control Device  42-4-603

Defendant's Exhibit A
Incident Report

Vehicle Description:

LICENSE: LCQ818
STATE: CO
VIN:    2HGEJ8547TH505208
TAB:    P422494
EXPIRATION: 2018-01
MAKE:   HON
MODEL:  CIV
COLOR:  GRN
STYLE:  SD
YEAR:   1996

Evidence:            See Evidence Sheet

Case Status:         Closed Adult Arrest and Proof of Service served

*********************************************************************
On December 31, 2017, at approximately 0023 hours, I was on patrol in the area of South Park Avenue and South First Street, Montrose County, Colorado, when I observed a primer colored Honda Civic bearing Colorado license plate LCQ818 in front of me with a single occupant in the driver's seat. It should be noted, I had received information earlier during my shift, Eric Vette, DOB: 05-04-92, was possibly driving that vehicle. I also knew Vette had three warrants (two felony and one misdemeanor) for his arrest. I attempted to conduct a traffic stop at the intersection of South Park Avenue and South First Street, Montrose County, Colorado. Upon activating my emergency lights and siren, the vehicle began to speed up to speeds exceeding 50 MPH. I continued to follow the vehicle south on South Park Avenue. As the vehicle approached the intersection of South Park Avenue and South Fifth Street, it ran the stop sign at a high rate of speed. I continued to follow the vehicle to the intersection of, South Park Avenue and South Twelfth Street where it again ran a stop sign turning left onto South Twelfth Street. I followed the vehicle on South Twelfth Street and it turned north onto South Mesa Avenue. The vehicle then drove north to South Ninth Street and turned eastbound onto South Ninth Street running stop sign. The vehicle drove eastbound on South Ninth Street to South Junction Avenue where it again ran a stop sign and turned southbound onto Junction Avenue. The vehicle continued southbound to South Twelfth Street where it ran the stop sign turning westbound onto South Twelfth Street. The vehicle drove west to South Mesa Avenue and turned south onto South Mesa Avenue. The vehicle dove at a high rate of speed on South Mesa Avenue to Niagara Road, exceeding speeds of 60 MPH. The vehicle then ran the stop sign at South Mesa Avenue and Niagara Road, turning westbound onto Niagara Road. The vehicle continued westbound to South Townsend Avenue where it ran a red light at the intersection when turning southbound. I then followed the vehicle south on South Townsend Avenue at speeds exceeding 100 MPH. The vehicle drove south to the Chipeta Road and turned onto Chipeta driving northbound. The vehicle continued northbound on Chipeta Road driving at speeds exceeding 80 MPH, running a stop sign at West Oak Grove Road and Chipeta Road. The vehicle continued northbound to the intersection of Fruit Park Road and Chipeta Road. The vehicle then turned westbound onto Fruit Park Road. The vehicle continued westbound to the intersection of Fruit Park Road and 6400 Road, where it ran the stop sign turning northbound onto 6400 Road. The vehicle drove north on 6400 road, running the red light at the intersection of 6400 Road and Spring Creek Road, as he drove north onto Marine Road.

Defendant's Exhibit A
Incident Report

As the vehicle began driving north on Marine Road, Colorado State Patrol entered the pursuit as the lead car. I then followed the vehicle to the intersection of Marine Road and West LaSalle Road where I observed the vehicle in a field just north of LaSalle Road. At that time, I observed a male running east in the field. I then caught up to the male who I identified as Eric Vette. Vette was then placed into custody. After Vette was placed into custody a search was conducted of his person and it revealed a small blue baggie with suspected cocaine which was later weighed with results of .2 grams, a red plastic container containing 5 Aripirrazole prescription pills, 1 Latuda prescription pill and 5 Clonidine prescription pills.

Vette was then escorted to a patrol vehicle where Montrose Emergency Medical Services evaluated him and stated he would be okay. During this time Vette advised he did not feel good. I asked Vette what he had taken and if he needed to go to the hospital. Vette advised he did not take anything, he just had smoked marijuana.

I then conducted an inventory search of the vehicle and found several items belonging to Amy Hager to include 8 filled prescription bottles and four credit cards. I then found a wallet with a Colorado drives license belonging to Joseph Gossett, DOB: 06-21-94. I also found a white container containing 3 Cephalexin prescription pills, 11 Gabapentin prescription pills, 1 Metazalone prescription pill, 2 Guanfacine Hydrochloride prescription pills, 4.5 Escitalopram Oxalate prescription pills. These medications are available by prescription only and were not contained in a prescription container.

I then transported Vette to the Montrose Memorial Hospital for a medical clearance. While at the hospital I read Vette the Colorado Expressed Consent and Vette elected for a blood draw.

It should be noted a clearance through NCIC/CCIC on Vette, revealed he is revoked with 16 active cases (10-196315) against his driver's license. The clearance also contained a protection order restraining Vette from any controlled substances case number D0432015CR000270.

Vette was booked into the Montrose County Jail on the above charges with a bond of 5,000 per the bond schedule. Due to the serious nature of these crimes committed repeatedly in the past, the high risk of injury or death to the citizen of Montrose County and all Law Enforcement involved in this incident, I respectfully request an elevated cash only bond.

All evidence was later booked into evidence locker number 7 at the Montrose County Sheriff's Office.

It should be noted I later learned Vette gave the Montrose County Jail an address of 206 North Grand, Olathe Colorado, but gave me an address of 1600 North Eagle Street, Delta CO 81416.

Defendant's Exhibit A
Incident Report

Law Supplemental Narrative:

Supplemental Narratives

| Seq | Name | Date | Narrative |
|-----|------|------|-----------|
| 2 | Keith Sanders | 17:58:21 12/31/17 | |

Case number:S17-17524      Sergeant Keith H. Sanders      B10126

Supplement Report:
*******************************************************************************

Sunday, December 31, 2017, at about 0034 hours, I overheard Deputy Gustin advised he was attempting to contact a vehicle with a wanted felon inside. Deputy Gustin advised the vehicle was not yielding to emergency lights and sirens. Deputy Gustin then began calling the direction of travel with updates at each change of direction. The pursuit began within the city limits of Montrose and then traveled south of Montrose to Chipeta Drive all within Montrose County. The pursuit then traveled North on Chipeta Drive. I positioned my marked patrol unit on Chipeta Drive just south of West Main Street and was set to deploy stop sticks. Deputy Gustin announced the vehicle turned onto Fruit Park Road.

I then repositioned my location to Spring Creek and Marine road to attempt to set up stop sticks. Upon my arrival to this intersection, the suspect vehicle blew through the intersection as I arrived. Colorado State Patrol, Trooper Buckingham, was at this intersection and positioned himself behind the suspect vehicle which was traveling north on Marine Road. Deputy Gustin then came through the intersection and I entered Marine Road behind Deputy Gustin. Deputy Gustin was in the number 2 position and took over calling the pursuit. Trooper Buckingham was negotiating his vehicle to conduct a Tactical Vehicle Intervention (TVI) and bring the pursuit to a stop, but the suspect vehicle kept cutting his position off along Marine Road. In the area of Silver Springs Drive and Marine road, Trooper Buckingham was able to TVI the vehicle. The intervention was a success and the vehicle came to rest in a wheat field just north of Marine road and LaSalle Road.

Upon my arrival to the scene, the suspect, Eric Tyler Vette (dob 5/4/92) exited the vehicle and began to flee on foot in an eastward direction. I continued to drive along the field and then came up the east side of the field. I seen Deputy Gustin in his patrol vehicle, with lights and siren still activated, chasing the suspect. I then exited my patrol unit and retrieved K9 Oxx and put him on lead. I heard Deputy Gustin issuing verbal commands to the suspect. I advised Deputy Gustin to hold his position until I got there with K9 Oxx for officer safety reasons. Upon my approach to the suspect and Deputy Gustin, K9 Oxx's collar came unlatched and K9 Oxx attempted to bite the suspect. I immediately grabbed K9 Oxx by the neck and prevented him from engaging the suspect further. I then reattached the collar to K9 Oxx and placed him in a down position. I then recognized the suspect as Eric Tyler Vette. I checked Eric's right shoulder where K9 Oxx made contact with him and observed some abrasions and scratches, but no broken skin.

Eric began making statements about what happened and where he was at. Eric also said he was "drugged". I advised Eric to exercise his right to remain silent and stop talking. Eric was then escorted out of the field and to the road where EMS was on scene to check Eric out medically. While in the field, an officer safety pat down was done on Eric and a red plastic container with a blue lid was found inside Eric's pants pocket. The container contained several different kinds of what appeared to be prescription pills. The container was not that of a prescription pill bottle and had no identifying labels as to who the container belonged to.

Defendant's Exhibit A
Incident Report

After EMS checked Eric out, he was released back to Sheriff's office custody. I then made my way to the crash site. I observed Eric to be sweating profusely and him saying he did not feel good. The temperature outside was 30 degrees Farenheit. I advised Deputy Gustin to place leg restraints on Eric and transport him to Montrose Memorial hospital for possible drug overdose. I remained on scene and assisted in the inventory search of the vehicle. The ignition on the vehicle had been punched and next to the center console was a wooden baton. I advised Deputy Horn to photograph all items of interest for documentation. I observed Deputy Horn photograph some ladies rings (jewelry) which were in a pouch in the center console.

D&G Wrecker service arrived on scene to remove the vehicle from the wheat field. The vehicle was towed and impounded at the Montrose County Sheriff's Office impound yard.

/s/Sergeant Keith H. Sanders

Defendant's Exhibit A
Incident Report

Law Supplemental Narrative:

Supplemental Narratives

Seq Name                    Date           Narrative
  3 Charles Searcy   17:30:15 01/16/18
Gabriel "Joseph" Gossett
06/21/1994
Unknown Address
970-250-7773

Amy Hager (Bullard)
04/05/1979
Unknown Address
970-765-6053

*****************************************

Per the request of Deputy Gustin, I attempted to contact Amy Hager, DOB:
04/05/1979, and Gabriel "Joseph" Gossett, DOB: 06/21/1994. I left a voice mail
message for each party on their respective telephone numbers.

/s/ Deputy Charles Searcy
FTO D. Taylor

Defendant's Exhibit A
Incident Report

Law Supplemental Narrative:

|              |                | Supplemental Narratives |
|--------------|----------------|-------------------------|
| Seq Name     | Date           | Narrative               |
| 4 Leo Peters | 11:31:38 01/17/18 |                      |

Supplement            Case: S17-17524            Deputy: L. Peters

Gabriel Joseph Gossett
DOB: 06/21/1994
1967 BORDEAUX CT
MONTROSE, CO 81401
970-615-7390

On the morning of 1/17/18, I spoke with Gabriel Gossett (DOB: 6/21/94) regarding this case. Upon contact, I advised Gabriel, the suspect in this case, Eric Vette (DOB: 5/4/92) had his (Gabriel's) wallet in his possession when Eric was contacted by law enforcement. I asked Gabriel if he was aware Eric had his wallet. Gabriel stated he was aware and was supposed to be meeting up with Eric to get it back. Gabriel asked how he was able to get his items back. After speaking with a records custodian, I advised Gabriel he would need to contact the 7th Judicial District Attorney's Office to get the items released as they were entered as evidence. Gabriel stated he understood the information I provided and I concluded my conversation with him.

/s/ Deputy L. Peters

Defendant's Exhibit B
Affidavit of Keith H. Sanders

.IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01987-KMT

ERIC TYLER VETTE

     Plaintiff,

v.

K-9 UNIT DEPUTY SANDERS
SERGEANT GUSTON
K-9 DEPUTY OX

     Defendants.

---

## AFFIDAVIT OF KEITH H. SANDERS

---

     I, Keith H. Sanders, being of lawful age and duly sworn, testify under oath as follows:

     1.   On December 31, 2017, I was an officer of the Montrose County Sheriff's Office, and held the rank of Sergeant.

     2.   I was an employee of the Montrose County Sheriff's Office from approximately 2001 to 2004, and 2008 to 2018.

     3.   I was personally involved in the arrest of Eric Tyler Vette on December 31, 2017. I responded to officer radio calls that a wanted felon, who I later learned was Mr. Vette, was fleeing from officers in his vehicle and not yielding to emergency lights and sirens. Other officers succeeded in stopping Mr. Vette's vehicle in a wheat field. I arrived at the field in my patrol vehicle. I had with me in my patrol vehicle a K9 unit named Oxx. I was Oxx's handler on December 31, 2017.

4.   My knowledge of the events that transpired during the course of Mr. Vette's flight and arrest, the extent of my participation in those events, and the extent of Oxx's involvement in those events, is fully set forth in a Supplemental Narrative Report that I wrote and created on December 31, 2017, at approximately 17:58:21 hours (5:58 p.m.).

5.   "Exhibit A" attached to the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) Or, In The Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56," which is submitted on my behalf in this lawsuit, is the Montrose County Sheriff's Office Incident Report documenting Mr. Vette's flight and arrest on December 31, 2017.

6.   The Supplemental Narrative Report that I created on December 31, 2017, at approximately 17:58:21 hours is on pages 7 and 8 of "Exhibit A." The words that I used in the Supplemental Narrative Report are my own.

7.   I have reviewed "Exhibit A" and verified that it is a true and accurate copy of the Incident Report, to include my Supplemental Narrative Report, relating to Eric Tyler Vette's flight and arrest on December 31, 2017.

8.   Based on my employment and experience with the Montrose County Sheriff's Office, it is the practice of the Montrose County Sheriff's Office that, when an MCSO officer is involved in an incident while on duty (for example, responding to a call for assistance, effecting an arrest, or participating in investigating a suspected crime), the involved officer will document the incident and his or her involvement in a Narrative Report or Supplemental Narrative Report.

9.   Officer Narrative Reports, Supplemental Narrative Reports, and other information relating to an incident are compiled to comprise an "Incident Report" for that particular incident.

10. In keeping with this practice, when I am involved in an incident, I write my Narrative or Supplemental Narrative Report as soon as practicable after the conclusion of the incident, and make it as complete and thorough as possible.

11. If force is used during an incident, either by me or a K9 unit that I am handling, I record and include as much detail as possible concerning that use of force. I do not leave out details.

12. I wrote my Supplemental Narrative Report relating to the incident of Mr. Vette's flight and arrest on December 31, 2017, in this manner. My Supplemental Narrative Report is complete and accurate. I did not omit facts. I finished writing the Supplemental Narrative Report as soon as possible, while my memories of the incident were still fresh. I included all facts and details that I remembered, including facts and details regarding the use of force and Oxx's attempt to bite Mr. Vette. As I state in my Report, when Oxx attempted to bite Mr. Vette, I immediately grabbed Oxx and prevented Oxx from engaging with Mr. Vette any further.

13. I personally did not use force on Mr. Vette. If I had, I would have recorded it in my Supplemental Narrative Report.

FURTHER AFFIANT SAYETH NOT.

KEITH H. SANDERS

STATE OF COLORADO        )
                         ) ss.
COUNTY OF MONTROSE        )

SUBSCRIBED AND SWORN TO before me this 4ᵗʰ of March, 2019, by Keith H.

Sanders.

Witness my hand and official seal:

[SEAL]

PRISCILLA K. MACFARLANE
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20074037048
MY COMMISSION EXPIRES OCTOBER 1, 2019

Notary Public

My commission expires: 10 - 01 - 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01987–KMT

ERIC TYLER VETTE,

      Plaintiff,

v.

K-9 UNIT DEPUTY SANDERS, and
SEARGENT GUSTON,

      Defendants.

---

## ORDER

---

This matter is before the court on "Defendant Gustin's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 28 [Gustin Mot.], filed March 4, 2019) and "Defendant Sanders' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Doc. No. 29 [Sanders Mot.], filed March 4, 2019).  Plaintiff filed a combined response to the motions (Doc. No. 38 [Resp.], filed May 10, 2019), and Defendants filed replies (Doc. No. 42 [Gustin Reply], filed May 29, 2019; Doc. No. 43 [Sanders Reply], filed May 29, 2019).

### STATEMENT OF THE CASE

Plaintiff, proceeding *pro se*, filed his Prisoner Complaint on August 6, 2018.  (Doc. No. 1 [Compl.])  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against the defendants in their individual and official capacities.  (*Id.* at 2–3.)  Plaintiff alleges on December 31, 2017,

Defendant Sanders violated his constitutional rights by using "over excessive force" due to his "punching, hitting with dog chain in face and letting dog attack [Plaintiff] after [he] was already aprehinded [sic] by two sheriffs." (*Id.* at 4.)  Plaintiff alleges Defendant Gustin violated his constitutional rights by "directly approving of [Defendant] Sanders's violations . . . by letting [Defendant] Sanders an[d] K-9 Ox assault [Plaintiff." (*Id.* at 5.)  Plaintiff alleges K-9 Deputy Ox bit his right shoulder and left him with scars.[1]  (*Id.*)  Plaintiff states the incident hurt him "physically, mentalally [sic] and emotionalally [sic]." (*Id.*)  Plaintiff seeks money damages and an investigation into the defendants' actions.  (*Id.* at 8.)

## STANDARDS OF REVIEW

### A.  Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v.*

---

[1] The court dismissed the claims against K-9 Deputy Ox.  (Doc. No. 48.)  Hereafter, the court will refer to "K-9 Deputy Ox" as "Oxx," which is the name that officers call him.  (*See* Sanders Mot. at 2 n.1.)

*New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.  *Failure to State a Claim upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely

conclusory.  *Id*. at 679–81.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

### C.  *Conversion of Rule 12(b)(6) Motion to Dismiss into Summary Judgment Motion*

In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice.  *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).  Defendant Sanders asks the court to take judicial notice of the Montrose County Sheriff's Office "Incident Report," including

Defendant Sanders' Supplemental Narrative Report, as a matter of public record.  (Sanders Mot. at 2, n.2; 8.)  Defendant Sanders has provided no law stating that police incident reports are automatically a matter of public record.  Moreover, according to the Montrose County Sheriff's Office website, a party may submit a request for "Jail and Report Checks," but the request may be denied.  (*See* https://montrosecountysheriffsoffice.com/mcsouploads/2019/02/Records-Request-2019.pdf.)  Accordingly, the court declines to take judicial notice of the Incident Report.

Nevertheless, "[a] 12(b)(6) motion must be converted into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and 'all parties . . . [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed. R. Civ. P.] 56.' " *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)); *see also Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment).  Normally, if a court decides to convert a Rule 12(b)(6) motion into a Rule 56 motion, it must provide the parties with notice to avoid unfair surprise.  *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986).  However, "when a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) (citing *Nichols*, 796 F.2d at 164).  Moreover, because the title of Defendant Sanders' motion stated it was a motion to dismiss or, alternatively, a motion for summary judgment, and it included evidentiary materials outside of the complaint, Plaintiff had explicit notice that the court could

5

convert the motion to a motion for summary judgment.  *See* 11 James Wm. Moore, *Moore's Federal Practice* ¶ 56.30[4] at p. 56–230 (3d ed. 2006) ("[c]ourts have concluded that a court is not required to give notice of its intention to convert a Rule 12(b)(6) motion into a summary judgment motion when the motion was styled in the alternative.").  Thus, the court finds that Plaintiff had adequate notice of the conversion and will treat the motion as one for summary judgment.

### D.  Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### A. *Qualified Immunity*

Defendants argue they are is entitled to qualified immunity on Plaintiff's claims against them in their individual capacities. The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[2] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity

---

[2] The court notes that qualified immunity is applicable only to individual capacity claims for monetary damages; it is not a defense against claims for injunctive relief, or against official capacity claims. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) (citing *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993)). Defendants have not addressed Plaintiff's claims for injunctive relief in their motions. Nevertheless, as explained *infra*, Plaintiff's claims for injunctive relief also properly dismissed.

from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

"In resolving a motion . . . based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part. *Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

### 1. *Excessive Force Claim*

Defendant Sanders argues he is entitled to summary judgment on Plaintiff's excessive force claims, and Defendant Gustin argues the excessive force claim against him should be dismissed.

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *See*, *e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential

threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396). A "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (further citation omitted)). The objectively unreasonable test considers the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Havens v. Johnson*, 783 F.3d 776, 781–82 (10th Cir. 2015) (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (internal quotation marks omitted)).

### a. *Defendant Sanders*

The court first considers whether Defendant Sanders is entitled to summary judgment as to Plaintiff's claim he used "over excessive force" due to his "punching [and] hitting [Plaintiff] with dog chain in face and letting dog attack [Plaintiff] after [he] was already aprehinded [sic] by two sheriffs." (*Id.* at 4.) (Compl. at 4.) The court notes that Defendant Sanders' motion is devoid of any argument regarding the allegations that Defendant Sanders punched Plaintiff and hit Plaintiff in the face with a dog chain. Thus, the claim regarding these allegations must go forward.

The court analyzes Plaintiff's allegation that Defendant Sanders "let[ ] [Oxx] attack [Plaintiff]," (*id.*), using the *Graham* factors discussed above: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others;

and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396.

The first *Graham* factor favors Defendant Sanders.  It is undisputed that Defendant Sanders arrived at the scene knowing Plaintiff was a "wanted felon."  (*See* Mot., Ex. A [Incident Report] at 7.)  Felonies are deemed more severe than when the underlying crime is a municipal code violation or a misdemeanor, for which the weight of this factor would typically fall in a plaintiff's favor.  *See Clark v. Bowcutt*, 675 F. App'x 799, 807 (10th Cir. 2017); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993); *White v. Martin*, 425 F. App'x 736, 745 (10th Cir. 2011).

The second and third *Graham* factors favor Plaintiff.  The court considers these factors together because the facts and analysis overlap.  The factors are analyzed "at the precise moment that [the officer] used force."  *See Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010). *Accord Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) ("The reasonableness of Defendants' actions depends . . . on whether the officers were in danger at the precise moment that they used force . . . .").

In his Complaint, Plaintiff states he was attacked by Oxx and assaulted by Defendant Sanders after he was apprehended by two sheriff deputies.  (Compl. at 4.)  Defendant Sanders provides his Supplemental Narrative Report as it relates to the alleged "attack," which states as follows:

> Upon my [Sergeant Sanders'] arrival to the scene, the suspect, Eric Tyler Vette . . . exited the vehicle and began to flee on foot in an eastward direction.  I continued to drive along the field and then came up the east side of the field.  I seen [sic] Deputy Gustin in his patrol vehicle, with lights and siren still activated, chasing the suspect.  I then exited my patrol unit and retrieved K9 Oxx and put him on lead.  I heard Deputy Gustin issuing verbal commands to the suspect.  I

> advised Deputy Gustin to hold his position until I got there with K9 Oxx for officer safety reasons.  Upon my approach to the suspect and Deputy Gustin, K9 Oxx's collar came unlatched and K9 Oxx attempted to bite the suspect.  I immediately grabbed K9 Oxx by the neck and prevented him from engaging the suspect further.  I then reattached the collar to K9 Oxx and placed him in a down position.  I then recognized the suspect as Eric Tyler Vette . I checked Eric's right shoulder where K9 Oxx made contact with him and observed some abrasions and scratches, but no broken skin.

(Mot., Ex. A, [Incident Report] at 7.)  It is unclear from the Supplemental Narrative Report whether Defendant Gustin or any other officer had already apprehended Plaintiff by the time Defendant Sanders and Oxx got to Plaintiff.  Moreover, Defendant Gustin's narrative states that he observed Plaintiff running in the field, caught up to Plaintiff, and placed Plaintiff into custody; however, his narrative is silent as to when Defendant Sanders and Oxx arrived on the scene.  (*See id.* at 5.)  Accordingly, the court is unable to determine whether Plaintiff posed an immediate threat to the safety of the officers or others or whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight when Defendant Sanders and Oxx arrived.  *Graham*, 490 U.S. at 396.

Under the totality of the circumstances, the court cannot say that Defendant Sanders has satisified his burden of showing an absence of evidence to support Plaintiff's Fourth Amendment excessive force claim against him.  *Celotex Corp.*, 477 U.S. at 325.  Defendant Sanders' motion for summary judgment as to the excessive force claim against him is denied.

### b.  Defendant Gustin

Defendant Gustin construes Plaintiff's claims that he "directly approv[ed] of [Defendant] Sanders's violations . . . by letting [Defendant] Sanders an[d] K-9 Ox assault [Plaintiff]," (Compl. at 5), as a failure to intervene claim.  (Gustin Mot. at 5.)

11

"[T]o be liable for failure to intervene, the officer[ ] must have 'observe[d] or ha[d] reason to know' of a constitutional violation and have had a 'realistic opportunity to intervene.' " *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (quoting *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210) (10th Cir. 2008)).  "In order for liability to attach," however, "there must have been a realistic opportunity to intervene to prevent the harm from occurring.  Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is [usually] an issue of fact . . . ."  *Vondrak*, 535 F.3d at 1210.  Regarding the alleged attack by Oxx, Plaintiff's Complaint is devoid of allegations that Defendant Gustin could have stopped Oxx, that Defendant Gustin had the ability to control Oxx, or that Defendant Gustin had sufficient time to intervene, and thus Plaintiff has failed to state a failure to intervene claim regarding Oxx's attack.  *See Savannah v. Collins*, 547 F. App'x 874, 876 (10th Cir. 2013) (Plaintiff who did not allege the defendant could have stopped K9, had the ability to control K9, or had time to intervene in K9 attack did not plead sufficient facts, taken as true, to state a claim against officer).  Similarly, Plaintiff has failed to allege facts that Defendant Gustin had an opportunity to intervene in Defendant Sanders' alleged excessive force.

Accordingly, because Plaintiff has failed to state a claim that Defendant Gustin failed to intervene in excessive force, Defendant Gustin is entitled to qualified immunity as to the claims against him.

### 2.  *Clearly Established*

The court next analyzes whether Defendant Sanders' alleged constitutional violation was clearly established at the time of the incident.  *Leverington*, 643 F.3d at 732.

An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

Quoting *Gurule v. Ambuehl*, No. 17–CV–00826–WJM–NYW, 2018 WL 1384464, at *7 (D. Colo. Mar. 16, 2018) , Defendant Sanders argues that the "U.S. District Court of Colorado could not find that 'by 2015, the law in this Circuit was clearly established that an officer applies excessive force by dispatching a canine to apprehend a person for whom the officer has an arrest warrant and who had demonstrated an inclination to flee and evade arrest.' " (Sanders Mot. at 13.) While the magistrate judge in *Gurule* recommended that the plaintiff's claim for excessive force based upon the deployment of a police dog be dismissed upon finding that the law was not clearly established "that an officer applies excessive force by dispatching a canine to apprehend a person for whom the officer has an arrest warrant and who has demonstrated an inclination to flee and evade arrest," 2018 WL 1384464, at *7, the magistrate judge further recommended that the plaintiff's claim for excessive force based upon the officer allowing the police dog to continue to bite the plaintiff after he was subdued be allowed to proceed, finding that the law was clearly established "that continued application of force to a suspect who was submissive and on the ground, and who was not acting in a threatening or aggressive manner, could constitute excessive force," *id.* at *10.

Several district courts in this Circuit have permitted excessive force claims involving the use of a police dog to survive a qualified immunity challenge where the complaint alleged that the police dog was ordered to bite—or permitted to continue biting—the plaintiff after the plaintiff already was restrained and/or fully complying with the police officers' orders.  *See*, *e.g.*, *Savannah v. Collins*, No. 12–CV–02403–RBJ–MJW, 2015 WL 4237592, at *4 (D. Colo. July 14, 2015) (finding that "both Tenth Circuit precedent and common sense establish that giving an attack command to an unrestrained police dog after a suspect has been subdued would be excessive and unreasonable"); *Moore v. Summer*, No. 12–3204–SAC, 2015 WL 1470290, at *10 (D. Kan. Mar. 31, 2015) (allowing claim for excessive force to proceed where officer allegedly ordered dog to attack without providing a warning and even though the plaintiff already had his arms raised); *Trujillo v. City of Lakewood*, No. 08–CV–00149–WDM–CBS, 2009 WL 3260724, at *4 (D. Colo. Oct. 9, 2009) (concluding "that it was clearly established that the use of force on a subdued individual posing no obvious threat ... was not warranted under the circumstances").

Given the cited case law, the court finds a reasonable officer would have known that application of force by a police service dog to a suspect who had been already been apprehended could constitute excessive force.  Accordingly, the court finds Defendant Sanders is not entitled to qualified immunity on Plaintiff's excessive force claim.

### B.  *Official Capacity Claims*

Plaintiff also sues the defendants in their official capacities, seeking money damages and injunctive relief in the form of an investigation into the defendants' actions.  (Compl. at 8.)

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."  *Pietrowski v. Town of Dibble*, 134 F.3d 1006,

1009 (10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  However, "local government officials sued under § 1983 in their official capacities are one and the same as the governmental entity they represent only if the local government would be suable in its own name." *Houston v. Reich*, 932 F.2d 883, 887 (10th Cir. 1991).  Plaintiff could not bring an excessive force claim against the Montrose County Sheriff's Office ("MCSO") in this case; therefore, he cannot bring such claims against the officers in their official capacities. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff.").

Municipal entities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  However, municipality may be held liable only for injuries resulting from the execution of one of its policies or customs. *Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999).  Moreover, "a municipality cannot be liable under § 1983 for acts of a municipal official in his official capacity unless that official possesses final policymaking authority to establish municipal policy with respect to acts in question." *Jantzen*, 188 F.3d at 1259.

Plaintiff has not alleged that Defendants Sanders and Gustin were in policymaking positions.  Therefore, Plaintiff's claims for money damages and injunctive relief against the defendants in their official capacities are dismissed under Rule 12(b)(6) for failure to state a claim.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that "Defendant Gustin's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 28) is **GRANTED**.  The claims against Defendant Gustin are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  It is further

**ORDERED** that "Defendant Sanders' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Doc. No. 29) is **GRANTED** in part and **DENIED** in part, as follows:

1. The motion is **GRANTED** as to the claims against Defendant Sanders in his official capacity, which are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6);

2. The motion is **DENIED** as to Plaintiff's excessive force claim seeking money damages against Defendant Sanders in his individual capacity.

Dated this 11th day of March, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-01987-KMT

UNITED STATES OF AMERICA,

 ERIC TYLER VETTE ,

                    Plaintiff,

v.

 KEITH SANDERS ,

                    Defendant.

---

## NOTICE OF APPEAL

---

Notice is hereby given that Keith Sanders, Sergeant for the Montrose County Sheriff's Office,
<small>(name the plaintiff or defendant)</small>

in the above-named case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Order [Doc. #52] denying Sergeant Sanders' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Doc. #29] and denying qualified immunity,
<small>(describe the order and/or judgment)</small>

entered in this action on the 11th day of March, 2020.

Dated:   March 24, 2020

                                */s/ Andrew R. McLetchie*
                                Signature

                                Andrew R. McLetchie, Esq.
                                Printed Name

                                350 Indiana Street, Suite 850
                                Street Address

                                Golden, Colorado      80401
                                City          State         Zip

                                (303) 298-8603
                                  Telephone

1

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on this 24th day of March, 2020, I caused a true and correct copy of the foregoing **NOTICE OF APPEAL** to be filed, pursuant to Fed. R. App. P. 3(a), with the Clerk of Court of the U.S. District Court for the District of Colorado using the CM/ECF system.

        */s/ Eden Rolland*
        Eden Rolland