**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**March 5, 2021**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**Christopher M. Wolpert**
**Clerk of Court**

ERIC TYLER VETTE,

      Plaintiff - Appellee,

v.

K-9 UNIT DEPUTY SANDERS,                       No. 20-1118

      Defendant - Appellant,

and

SERGEANT GUSTIN,

      Defendant.

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-01987-KMT)**
_____

Eden R. Rolland (Andrew R. McLetchie with her on the briefs), Fowler, Schimberg, Flanagan & McLetchie, P.C., Golden, Colorado, for Defendant - Appellant.

Ashok Chandran, NAACP Legal Defense & Educational Fund, Inc., New York, New York (Sherrilyn A. Ifill, President and Director-Counsel, Janai S. Nelson, Samuel Spital, and Kevin E. Jason, NAACP Legal Defense & Educational Fund, Inc., New York, New York; Christopher Kemmitt, Mahogane D. Reed, NAACP Legal Defense & Educational Fund, Inc., Washington, DC, and Samuel Weiss, Right Behind Bars, Washington, DC, with him on the brief), for Plaintiff - Appellee.

_____

Before **McHUGH**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **CARSON**, Circuit Judge.
_____

**McHUGH**, Circuit Judge.

_____

Defendant-appellant Keith Sanders, a sergeant with the Montrose County Sheriff's Office, appeals the district court's denial of his summary judgment motion based on qualified immunity. Plaintiff-appellee Eric Tyler Vette had filed a verified complaint alleging, among other things, that Sergeant Sanders subjected him to excessive force during the course of his arrest by committing the following acts after Mr. Vette had already been apprehended: punching Mr. Vette, hitting him in the face with a dog chain, and letting a police dog attack him. Sergeant Sanders moved to dismiss the complaint, or, in the alternative, for summary judgment, arguing he was entitled to qualified immunity.

The district court converted Sergeant Sanders's motion to one for summary judgment and denied it. Sergeant Sanders appeals the district court's decision, invoking the collateral order doctrine as the purported basis for appellate jurisdiction.

We lack jurisdiction over Sergeant Sanders's appeal to the extent his arguments depend on facts that differ from those the district court assumed in denying his summary judgment motion. Exercising jurisdiction over the abstract issues of law advanced by Sergeant Sanders, we hold the district court did not err.

## I.  BACKGROUND

### A.  *Factual History*[1]

On December 31, 2017, Steve Gustin, a sergeant with the Montrose County Sheriff's Department, observed Mr. Vette driving on a public road in Montrose, Colorado. Sergeant Gustin attempted to pull Mr. Vette over to run a warrant check. Mr. Vette drove away, and Sergeant Gustin pursued. Mr. Vette eventually drove into a field and fled on foot; Sergeant Gustin continued his pursuit. Sergeant Sanders and his police dog, Oxx, arrived at the field after Sergeant Gustin.

Sergeant Gustin and another officer apprehended Mr. Vette. After Mr. Vette was apprehended, Sergeant Sanders "punched [him] and hit [him] in the face with a dog chain" and "let[] [Oxx] attack" him. Dist. Ct. Op. at 9 (third and fourth alterations in original) (citing Verified Complaint[2] at 4). Oxx bit Mr. Vette's right shoulder.

---

[1] In reviewing an interlocutory appeal from the denial of summary judgment based on qualified immunity, this court "must accept any facts that the district court assumed in denying summary judgment." *Amundsen v. Jones*, 533 F.3d 1192, 1196 (10th Cir. 2008). Sergeant Sanders makes several arguments that we should not accept the district court's factual findings here. As explained in Part II.B, *infra*, these arguments lack merit. Accordingly, we draw our facts from the district court's summary judgment order, in which the district court viewed the evidence in the light most favorable to Mr. Vette as the nonmoving party. We also include facts the parties do not dispute on appeal. *See Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir. 2006) (in interlocutory appeal from denial of qualified immunity at summary judgment, noting the "reviewing court need not look solely to plaintiff's version of facts where facts are undisputed").

[2] Mr. Vette's Verified Complaint is found in the Appendix at 8–15. We cite to the page numbers in the Verified Complaint.

Mr. Vette was charged with one felony offense of "Vehicular Eluding," one
felony offense of "Identity Theft," and eleven misdemeanor offenses based, in part,
on items found in Mr. Vette's possession.[3] App. at 53. Law enforcement took three
photographs of Mr. Vette at the arrest scene—the first two photographs show teeth
marks from Oxx on Mr. Vette's right shoulder, and the third shows him sitting cross-
legged on the ground, with only the right half of his face visible.

### B.  Procedural History

Mr. Vette, proceeding *pro se*, filed a verified complaint (the "Verified
Complaint") in the United States District Court for the District of Colorado, alleging,
among other things, that Sergeant Sanders subjected him to excessive force.[4] He
signed the Verified Complaint under penalty of perjury. As relevant to his excessive
force claim, Mr. Vette alleged the following:

> On December 31 2017, Deputy Sanders Violated My Constitutional
> Rights Amendments 8 and 14 by, Police Brutality and us[]ing over
> excessive force when date of arrest due to Sanders punching, hitting
> with dog chain in face and letting dog attack me after I was already

---

[3] The eleven misdemeanor charges were for: (1) "Unlawful Possession of
controlled substance," (2) "DUID," (3) "Obstruction Government Operations,"
(4) "Reckless Endangerment," (5) "Authorized Possession of Controlled Substance,"
(6) "Resisting Arrest," (7) "Drove Vehicle When License Revoked," (8) "Protection
order violation," (9) "Reckless Driving," (10) "Speeding," and (11) "Disregarded
Traffic Control Device." App. at 53.

[4] Mr. Vette initially also sued Sergeant Gustin and Oxx, brought official
capacity claims against Sergeant Sanders, and requested injunctive relief. The district
court dismissed the claims against Oxx in September 2019. It later dismissed
Mr. Vette's injunctive-relief claims, all of his claims against Sergeant Gustin, and the
claims against Sergeant Sanders in his official capacity. Mr. Vette's dismissed claims
are not at issue in this appeal.

> Ap[p]reh[e]nded by two sheriffs. There's no reason why I was getting
> assaulted by deputy [S]anders an[d] Ox[x] while after being
> ap[p]rehended. This in[ci]dent hurt me and physically, emotionally,
> menta[]lly.

Verified Complaint at 4. Mr. Vette further alleged that "Ox[x] bit[] my right shoulder to where I have scar[]s to prove." *Id.* at 5.

Sergeant Sanders filed a motion to dismiss the Verified Complaint or, in the alternative, for summary judgment, asserting he was entitled to qualified immunity. In support of his motion, Sergeant Sanders attached two exhibits: (1) the Montrose County Sheriff's Department's incident report of the arrest (the "Incident Report"), which included his narrative account prepared shortly after the arrest (the "Supplemental Narrative"); and (2) an affidavit he prepared for litigation (the "Affidavit"). In his Supplemental Narrative, Sergeant Sanders states that Oxx "came unlatched and . . . attempted to bite" Mr. Vette, but he "immediately grabbed" Oxx and "prevented him from engaging [Mr. Vette] further." App. at 56. He further states that Oxx caused "some abrasions and scratches [to Mr. Vette's right shoulder], but no broken skin." *Id.* In his Affidavit, Sergeant Sanders affirms that the Supplemental Narrative "complete[ly] and accurate[ly]" documents his interactions with Mr. Vette on the night of his arrest—including "Oxx's attempt to bite Mr. Vette"—and avers that he did not personally use any force against Mr. Vette. *Id.* at 62. Mr. Vette, still proceeding *pro se*, filed a response in opposition to Sergeant Sanders's motion. Sergeant Sanders filed a reply brief, to which he attached as an additional exhibit the three photographs of Mr. Vette taken at the arrest scene.

The district court converted Sergeant Sanders's motion to one for summary judgment and denied it. Viewing the evidence in the light most favorable to Mr. Vette as the nonmovant, the court concluded a reasonable jury could find that, after Mr. Vette was apprehended by two officers, Sergeant Sanders punched him, hit him in the face with a dog chain, and allowed Oxx to attack and bite him.[5] The court further held this alleged conduct constituted a violation of Mr. Vette's clearly established rights under the Fourth Amendment.[6] It accordingly held Sergeant Sanders was not entitled to qualified immunity.

Sergeant Sanders timely appealed. Although Mr. Vette appeared *pro se* before the district court, he is represented by counsel on appeal.

---

[5] The district court arguably concluded Sergeant Sanders had not challenged Mr. Vette's claim that Sergeant Sanders punched and hit Mr. Vette in the face with a dog chain. Our ensuing analysis and disposition, however, would not materially differ. Under those circumstances, we review the record de novo, in the light most favorable to Mr. Vette as the nonmoving party, to determine whether the evidence could support a jury finding that Sergeant Sanders punched and used a dog chain to hit Mr. Vette in the face. *See, e.g.*, *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) ("[W]hen the district court at summary judgment fails to identify the particular charged conduct that it deemed adequately supported by the record, we may look behind the order denying summary judgment and review the entire record de novo to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make."). Here, a de novo review of the record supports that a reasonable jury could make these findings. As discussed in more detail in Part II.B, *infra*, these facts are supported by the averments in Mr. Vette's Verified Complaint, and the record does not blatantly contradict them.

[6] Mr. Vette invoked the Eighth and Fourteenth Amendments in his Verified Complaint. Because Mr. Vette was proceeding *pro se*, the district court "review[ed] his pleadings and other papers liberally," Dist. Ct. Op. at 2 (quoting *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007)), and construed his excessive force claim as arising under the Fourth Amendment. The parties agree the district court was correct in doing so.

## II.   DISCUSSION

Sergeant Sanders challenges the district court's denial of his summary judgment motion based on qualified immunity. We begin by setting forth the jurisdictional standards broadly relevant to this appeal and then we address Sergeant Sanders's specific arguments.

### A.  Standards of Appellate Jurisdiction

As the appellant, Sergeant Sanders has the duty to establish the existence of this court's appellate jurisdiction. Fed. R. App. P. 28(a)(4); *EEOC v. PJ Utah, LLC*, 822 F.3d 536, 542 n.7 (10th Cir. 2016) ("[T]he appellant . . . bears the burden to establish appellate jurisdiction."). Except in limited circumstances, this court may exercise jurisdiction only over appeals from "final decisions of the district courts of the United States," 28 U.S.C. § 1291, and "orders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291," *Ralston v. Cannon*, 884 F.3d 1060, 1066 (10th Cir. 2018) (internal quotation marks omitted). The collateral order doctrine, however, allows interlocutory review of a decision "deemed 'final' [because] it disposes of a matter 'separable from, and collateral to' the merits of the main proceeding, 'too important to be denied review,' and 'too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 414 n.5 (2015) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

Under the collateral order doctrine, this court has jurisdiction to review a state official's appeal from the denial of qualified immunity at the summary judgment stage, but our jurisdiction is limited to abstract questions of law. *See, e.g.*, *Estate of Valverde ex rel. Padilla v. Dodge*, 967 F.3d 1049, 1058 (10th Cir. 2020) (explaining this court "ha[s] jurisdiction only to the extent that the appeal turns on abstract legal conclusions" (internal quotation marks omitted)). In particular, we may review "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation," and "(2) whether that law was clearly established at the time of the alleged violation." *Id.* (internal quotation marks omitted); *see also Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) ("[E]ven if the district court concludes that controverted issues of fact remain, an appellate court may consider the legal question of whether the defendant's conduct, taken as alleged by the plaintiff, violates clearly established law.").

In the same vein, this court generally "lack[s] jurisdiction to review factual disputes in this interlocutory posture," *Crowson v. Washington County*, 983 F.3d 1166, 1177 (10th Cir. 2020), including "the district court's determination . . . that the evidence could support a finding that particular conduct occurred," *Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir. 2006) (internal quotation marks omitted); *accord Fancher v. Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013) (explaining that this court "lacks jurisdiction at this stage to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual

8

inference."). Thus, "if a district court concludes a reasonable jury could find certain specified facts in favor of the plaintiff, . . . we must usually take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of law." *Lynch v. Barrett*, 703 F.3d 1153, 1159 (10th Cir. 2013) (quotation marks omitted); *see also Amundsen v. Jones*, 533 F.3d 1192, 1196 (10th Cir. 2008) ("Because we may review only legal issues, we must accept any facts that the district court assumed in denying summary judgment.").

A narrow exception to this jurisdictional limitation exists "when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). This standard is "a very difficult one to satisfy." *Crowson*, 983 F.3d at 1177 (quotation marks omitted). We will not "look beyond the facts found and inferences drawn by the district court" unless those findings "constitute visible fiction." *Id.* (quotation marks omitted).

## B. Factual Arguments

"The first step in assessing the constitutionality of [an official's] actions is to determine the relevant facts." *Scott*, 550 U.S. at 378. In an interlocutory appeal from a district court's denial of summary judgment on qualified immunity grounds, this court ordinarily must accept the version of facts the district court assumed true at summary judgment. *See, e.g.*, *Amundsen*, 533 F.3d at 1196. Sergeant Sanders argues we should not do so here, however, for two reasons. First, he argues the district court erred in treating Mr. Vette's Verified Complaint as evidence and therefore as a source of factual

matter at summary judgment. Second, he argues the facts the district court ruled a reasonable jury could find are blatantly contradicted by the record. We address these arguments in turn, concluding each lacks merit.[7]

## 1. Verified Complaint as Evidence

Sergeant Sanders asserts the district court erred by treating Mr. Vette's Verified Complaint as evidence, rather than as mere pleadings. Properly excluding the Verified Complaint, Sergeant Sanders argues, there was "no evidence in the record from [Mr. Vette]." Aplt. Br. at 14–15. Mr. Vette counters that, under this court's precedent, the district court properly treated the Verified Complaint as an affidavit and therefore as testimonial evidence. We agree with Mr. Vette.

We review a district court's evidentiary determinations when resolving a motion for summary judgment—including the decision to treat submissions as competent evidence—for an abuse of discretion. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *see also Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 854 (10th Cir. 1999). We have squarely held that a "verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out" in Rule 56 of the Federal Rules of Civil Procedure. *Abdulhaseeb v.*

---

[7] Mr. Vette also raises an argument implicating the relevant facts. He contends the *pro se* response he submitted in opposition to Sergeant Sanders's summary judgment motion may also be treated as evidence in this appeal, even though he acknowledges the district court did not itself rely on this filing as evidence when resolving Sergeant Sanders's motion. We decline to consider the merits of Mr. Vette's argument, for even without relying on his response filing as evidence, we resolve the appeal in his favor.

*Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (quotation marks omitted);[8] *see also*

*Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("The plaintiff's complaint

may also be treated as an affidavit if it alleges facts based on the plaintiff's personal

knowledge and has been sworn under penalty of perjury."). Rule 56 in turn provides

that "[a]n affidavit or declaration used to support or oppose a [summary judgment]

motion must be made on personal knowledge, set out facts that would be admissible

in evidence, and show that the affiant or declarant is competent to testify on the

matters stated." Fed. R. Civ. P. 56(c)(4).

Sergeant Sanders does not claim that Mr. Vette's Verified Complaint fails to

satisfy these standards. Indeed, at oral argument counsel conceded that, under this

circuit's precedent, the Verified Complaint "is considered to be the same as an

affidavit or a declaration given under oath." Oral Arg. at 5:40–54. In light of our

clear caselaw and Sergeant Sanders's concession, the district court did not abuse its

discretion by treating Mr. Vette's Verified Complaint as evidence when resolving

Sergeant Sanders's summary judgment motion.

Sergeant Sanders also argues the district court should not have treated Mr. Vette's

Verified Complaint as evidence because its averments are "unsubstantiated" by other

evidence. *See, e.g.*, Aplt. Br. at 14; Aplt. Reply at 9. This argument goes to the weight

---

[8] *Abdulhaseeb v. Calbone* cites to Federal Rule of Civil Procedure 56(e) for
this standard. 600 F.3d 1301, 1311 (10th Cir. 2010). Rule 56 was amended in 2010,
and subdivision (c)(4) carries forward the relevant provisions of former subdivision
(e).

of Mr. Vette's summary judgment evidence, however, not to whether the district court erred in treating the Verified Complaint as evidence in the first instance. *See, e.g.*, *Speidell v. United States ex rel. IRS*, 978 F.3d 731, 740 (10th Cir. 2020) ("So long as an affidavit is based upon personal knowledge and set[s] forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment." (alterations in original)); *United States v. $100,120*, 730 F.3d 711, 717 (7th Cir. 2013) ("To reject testimony because it is unsubstantiated and self-serving is to weigh the strength of the evidence or make credibility determinations—tasks belonging to the trier of fact."). Assessing the weight of the evidence is the role of the trier of fact, not the court at summary judgment. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment[.]").

In sum, we reject Sergeant Sanders's contention that the district court abused its discretion in treating Mr. Vette's Verified Complaint as evidence.

## 2. Blatant-Contradiction Exception

Sergeant Sanders also argues the facts averred in Mr. Vette's Verified Complaint, which the district court concluded a reasonable jury could credit, are blatantly contradicted by the record.

"[W]hen the version of events the district court holds a reasonable jury could credit is blatantly contradicted by the record," this court does not accept that version of events but instead "assess[es] the facts de novo." *Crowson*, 983 F.3d at 1177

(internal quotation marks omitted). This standard is satisfied only when "the version of events is so utterly discredited by the record that no reasonable jury could have believed" it, constituting "visible fiction." *Scott*, 550 U.S. at 380–81. Here, Sergeant Sanders argues Mr. Vette's averments that he was struck in the face and that Sergeant Sanders intentionally allowed Oxx to attack him are blatantly contradicted by the following evidence in the record: (1) Sergeant Sanders's Supplemental Narrative in the Incident Report; (2) Sergeant Sanders's Affidavit; and (3) three photographs of Mr. Vette taken at the arrest scene.[9]

For the reasons now explained, we conclude the district court's factual determinations are not blatantly contradicted by the record. Because this circuit's blatant-contradiction jurisprudence treats testimonial evidence differently than documentary evidence, we separately consider Sergeant Sanders's testimonial evidence—that is, his Supplemental Narrative and Affidavit—and the arrest-scene photographs.

---

[9] At oral argument, Mr. Vette's counsel asserted Sergeant Sanders waived reliance on the arrest-scene photographs as a basis for his blatant-contradiction arguments by failing to discuss them in his opening brief. We agree that Sergeant Sanders's argument concerning the photographs is not particularly well-developed in his opening brief. Sergeant Sanders does argue, however, that "the entire evidentiary record, comprised of the Incident Report, [his] affidavit, *and the Incident photos* discloses no indication of an intentional use of force." Aplt. Br. at 19 (emphasis added); *see also id.* at 9 (explaining the photographs show merely "scratch marks made by Oxx"). Although arguably waived for inadequate presentation, we nevertheless consider the photographs when assessing Sergeant Sanders's blatant-contradiction arguments, as analysis of the photographs does not alter our conclusion.

*a. Testimonial evidence*

We reject Sergeant Sanders's contention that his Supplemental Narrative and Affidavit do, or even could, constitute evidence satisfying the blatant-contradiction exception. This court has generally limited application of the exception to cases involving objective documentary evidence, such as video recordings or photographs. *See, e.g.*, *Estate of Valverde*, 967 F.3d at 1062 (explaining this court was "not bound by th[e district court's factual] ruling to the extent it is blatantly contradicted by the video" of the incident at issue, in an interlocutory appeal from denial of qualified immunity); *Farrell v. Montoya*, 878 F.3d 933, 938 (10th Cir. 2017) (rejecting plaintiffs' version of events because "the dash-cam video contradicts the factual basis of the argument"); *Thomas*, 607 F.3d at 659 (accepting plaintiff's version of the facts except "to the extent that there [was] clear contrary video evidence of the incident at issue"). *See also Harte v. Bd. of Comm'rs of Cnty. of Johnson*, 864 F.3d 1154, 1201 n.6 (10th Cir. 2017) (reversing district court's grant of qualified immunity, and noting that defendants' "lack of photographs is significant" because "it deprives the deputies of the *kind of evidence* that would 'blatantly contradict[]' the [plaintiffs'] version of the facts" (first alteration in original) (emphasis added) (quoting *Scott*, 550 U.S. at 380)). We have also applied the exception where the plaintiff herself was the source of the testimonial evidence blatantly contradicting her account. *See Koch v. City of Del City*, 660 F.3d 1228, 1240 (10th Cir. 2011) (applying blatant-contradiction exception where fact asserted by plaintiff was "directly contradicted by her [own] deposition testimony").

14

But we have not extended the exception to circumstances in which the court is merely presented with two parties' conflicting testimonial accounts of the same events. We have declined to do so where the testimonial account contradicting the plaintiff's was offered by a third party. *See McCowan v. Morales*, 945 F.3d 1276, 1281 n.3 (10th Cir. 2019) (holding third-party's statements did not qualify as evidence blatantly contradicting plaintiff's version of events because the third party's account did "not demonstratively depict the events as they occurred, but [wa]s instead a [witness's] recording of what he perceived, which is more susceptible to being mistaken, falsified or incomplete"); *see also Rhoads v. Miller*, 352 F. App'x 289, 291 (10th Cir. 2009) (unpublished) ("Here, there is no videotape or similar evidence in the record to blatantly contradict [plaintiff's] testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury."). We must also decline to extend the exception where the source of the contradictory testimony is the defendant himself. *See Younes v. Pellerito*, 739 F.3d 885, 889 (6th Cir. 2014) (noting defendant officers' "testimony about the incident is not the type of evidence in the record [that] 'utterly discredits'" a plaintiff's account) (quoting *Scott*, 550 U.S. at 380)).

We thus reject Sergeant Sanders's attempt to rely on his Supplemental Narrative and Affidavit—i.e., his own testimonial accounts of the events at issue—as evidence blatantly contradicting the district court's factual determinations, as his accounts simply do not constitute the type of evidence that could satisfy the exception.

b. *Documentary evidence*

We next consider whether the arrest-scene photographs satisfy the exception. This court has indicated that photographs are the "kind of evidence" that may satisfy the blatant-contradiction standard. *See Harte*, 864 F.3d at 1201 n.6. Nevertheless, we have little trouble concluding the photographs here do not "so utterly discredit" Mr. Vette's account "that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380. To the contrary, they can be viewed as consistent with his account.

Sergeant Sanders argues the arrest-scene "photographs speak for themselves." Aplt. Reply at 16. Specifically, he contends the photograph of Mr. Vette sitting on the ground after he was apprehended "belies Mr. Vette's allegations that he was 'punch[ed], [and] hit[] with [a] dog chain in [his] face.'" *Id.* (first and third alterations in original). Sergeant Sanders does not explain precisely why he believes this photograph "belies" Mr. Vette's allegations of having been struck in the face. But Sergeant Sanders appears to suggest that because there are no obvious bruises or other markings on the right side of Mr. Vette's face, the only portion of his face visible in the photograph, Mr. Vette could not have been struck. This argument lacks merit. The left half of Mr. Vette's face is not visible in the photograph, so the photograph does not "belie" Mr. Vette's allegations that Sergeant Sanders punched him and hit him in the face with a dog chain. Rather, the photograph is consistent with the possibility that Sergeant Sanders battered the left side of Mr. Vette's face.

Turning next to the two photographs of Mr. Vette's shoulder, Sergeant Sanders asserts these photographs "visibly demonstrate an accidental and fleeting encounter

16

with [Oxx], not a 'dog attack,'" as they show merely "some abrasions and scratches, but no broken skin." *Id.* First, we observe that, contrary to Sergeant Sanders's characterization, Mr. Vette's skin does appear to be broken in several places. At least, a reasonable jury viewing the photographs could conclude as much. More to the point, these photographs show markings consistent with multiple instances of contact with a dog's teeth. Thus, although Sergeant Sanders quibbles with the severity of Oxx's encounter with Mr. Vette, the photographs do not blatantly contradict—and indeed, serve to corroborate—Mr. Vette's account that Oxx attacked and bit his right shoulder. *See* Dist. Ct. Order at 2 (describing Mr. Vette's allegation that Oxx "bit his right shoulder and left him with scars" (citing Verified Complaint at 5)).

Sergeant Sanders's contention that the photographs "visibly demonstrate" that Oxx's attack was "accidental," rather than intended by Sergeant Sanders, is even less persuasive. Aplt. Br. at 16. Sergeant Sanders seems to imply that because the photographs do not display some greater level of injury inflicted by Oxx, the encounter between Oxx and Mr. Vette must have been relatively brief, which in turn suggests that Sergeant Sanders did not intend the encounter in the first place. Sergeant Sanders will be free to make these arguments to a jury. But this inference-upon-inference exercise comes nowhere close to satisfying the blatant-contradiction exception. That is, the photographs of Mr. Vette's shoulder do not render his averment that Sergeant Sanders allowed Oxx to attack him after he was already apprehended "visible fiction." *Scott*, 550 U.S. at 380. *Cf. Green v. Post*, 574 F.3d 1294, 1296–97 & n.4 (10th Cir. 2009) (applying blatant-contradiction exception to

17

correct the district court's finding that a traffic light was red, where videotape in the record showed it was yellow).

In sum, the arrest-scene photographs do not "utterly discredit" Mr. Vette's account. *Scott*, 550 U.S. at 380. The photograph of Mr. Vette sitting down tells us nothing about the condition of the other side of his face, and the two photographs of his shoulder can be viewed as corroborating Mr. Vette's allegations. Accordingly, we reject Sergeant Sanders's argument that the district court's determination as to the version of facts a reasonable jury could credit is blatantly contradicted by the photographs in the record.

\* \* \*

As discussed at the outset, the blatant-contradiction standard is "a very difficult one to satisfy." *Crowson*, 983 F.3d at 1177 (quotation marks omitted). For the reasons discussed above, Sergeant Sanders falls short of doing so here. Indeed, he falls so far short—namely, by attempting to satisfy it via testimonial evidence he prepared himself and via photographic evidence that might corroborate, rather than contradict, Mr. Vette's account—that we feel compelled to remind litigants once again to "be cognizant of the limited nature of the exception" before invoking it on appeal. *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 759 (10th Cir. 2013).

\* \* \* \*

To summarize, neither Sergeant Sanders's blatant-contradiction argument, nor his argument that the district court erred in treating the Verified Complaint as evidence, has merit. As such, for purposes of this interlocutory appeal we "accept

[the] facts that the district court assumed" true at summary judgment. *Amundsen*, 533 F.3d at 1196.

### C. *Sergeant Sanders's Remaining Arguments*

Sergeant Sanders nominally frames his remaining arguments on appeal as abstract legal challenges. In actuality, these arguments depend on facts that differ from those the district court held a reasonable jury could find. Because his arguments challenge the district court's factual findings, rather than present pure questions of law, they fall outside the parameters of our collateral-order jurisdiction. *See, e.g.*, *Estate of Valverde*, 967 F.3d at 1058; *Thomas*, 607 F.3d at 658–59. Alternatively, Sergeant Sanders's remaining arguments depend on the success of his arguments addressed in Part II.B, *supra*. Because those arguments fail, his arguments predicated thereon necessarily fail as well.

Sergeant Sanders's articulation of the issue raised on appeal highlights these flaws. He frames the issue as "[w]hether the District Court erred in denying [his] Motion for Summary Judgment based on qualified immunity, where [Mr. Vette] *failed to provide any admissible and specific factual evidence* in support of his claim of excessive force." Aplt. Br. at 4 (emphasis added). Thus, his issue on appeal is based either on successfully challenging the district court's decision to rely on Mr. Vette's Verified Complaint as evidence (failure to provide "admissible" evidence), which he has not successfully done; or it challenges the district court's determinations as to which facts the evidence could reasonably support (failure to provide "specific" evidence), over which this court lacks appellate jurisdiction.

Similarly, although Sergeant Sanders asserts the district court "misapplied the summary judgment standard in the context of qualified immunity in several ways," Aplt. Br. at 11, each of the ways he claims the district court misapplied the standard, in fact, relates to the district court's assessment of the evidence. Specifically, Sergeant Sanders argues in Part A of his opening brief that the district court "misunderstood and misapplied the [relevant] legal standards" because the burden was on Mr. Vette to support his excessive force claim by "affidavit or other admissible evidence." *Id.* at 14. Sergeant Sanders asserts Mr. Vette instead "did nothing," but "[d]espite the absence of any evidence in the record from [Mr. Vette], the District Court assumed the role of [Mr. Vette's] 'advocate' by crediting [his] unsubstantiated allegations" in his Verified Complaint. *Id.* Having concluded the district court did not err in treating the Verified Complaint as an affidavit, we reject Sergeant Sanders's assertion that there was an "absence of any evidence in the record from [Mr. Vette]." *Id.* And we lack jurisdiction to review the district court's factual conclusions concerning the reasonable facts and inferences the evidence could support.[10] *See Fancher*, 723 F.3d at 1199 (reasoning that although defendant

---

[10] When describing the district court's factual determinations at summary judgment, Sergeant Sanders repeatedly claims the district court 'credited' Mr. Vette's averments in the Verified Complaint. *See* Aplt. Br. at 11, 14; Aplt. Reply at 1, 9, 13, 17. To dispel any potential confusion, we explain here that, when resolving Sergeant Sanders's motion for summary judgment, the district court did not 'credit' Mr. Vette's version of events in the sense of finding his version to be the truth. Rather, the district court held (1) there were genuine issues of fact as to Sergeant Sanders's conduct on the night in question, and (2) viewing the evidence in the light most favorable to Mr. Vette as the nonmoving party, Sergeant Sanders's conduct violated clearly established law. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S.

"nominally frame[d his] argument as a legal issue" concerning the district court's

purported misapplication of the legal standard, "[u]ltimately . . . [his] argument

depends upon a challenge to the facts the district court concluded a reasonable jury

could infer based upon the evidence in the summary judgment record," and was

therefore unreviewable on interlocutory appeal).

Sergeant Sanders's arguments in the subsequent sections of his brief suffer

from the same defects and are therefore equally ill-fated. *See* Aplt. Br. at 15–19 (Part

B.1: arguing Mr. Vette "did not present *any evidence* to dispute that Sergeant Sanders

did not intentionally dispatch Oxx or let Oxx continue to engage" Mr. Vette

(emphasis added)); *id.* at 19–21 (Part B.2: arguing Mr. Vette "failed to overcome the

first prong of Sergeant Sanders'[s] qualified immunity" defense because he presented

"*no evidence* of excessive force" (emphasis added)); *id.* at 21–25 (Part B.3: arguing

Mr. Vette "failed to overcome the second prong of Sergeant Sanders'[s] qualified

immunity" defense because, under *Sergeant Sanders's* view of the facts, rather than

the version of facts assumed by the district court, his conduct was not a clearly

established Fourth Amendment violation); *id.* at 25–28 (Part C: arguing Mr. Vette

"failed to proffer *any admissible evidence* to genuinely dispute Sergeant Sanders'[s]

sworn statement that Sergeant Sanders did not personally use any force against

[Mr. Vette]" (emphasis added)).

---

242, 249 (1986) (noting that at summary judgment, the district judge does not
personally "weigh the evidence and determine the truth of the matter" but rather
"determine[s] whether there is a genuine issue for trial").

In sum, Sergeant Sanders's remaining arguments are alternatively meritless or are ones over which we may not exercise appellate jurisdiction. We now consider whether the district court erred in denying summary judgment as a matter of law; we do so relying on the district court's factual determinations, as we must at this stage of the litigation.

### D.  Merits of Qualified Immunity Defense

In an interlocutory appeal from the denial of summary judgment based on qualified immunity, we have jurisdiction over the abstract legal questions of (1) whether, accepting the facts the district court concluded a reasonable jury could find based on the summary judgment evidence, those facts constitute a legal violation, and (2) whether that legal violation was clearly established at the time of the violation. *See, e.g.*, *Estate of Valverde*, 967 F.3d at 1058. Accordingly, here we have jurisdiction to review whether (1) striking an apprehended suspect in the face and unleashing a police dog to attack him violates the suspect's Fourth Amendment rights, and (2) whether such a violation was clearly established by December 2017. We answer these two questions in the affirmative and accordingly affirm the district court's judgment that Sergeant Sanders is not entitled to qualified immunity.

### 1.  Legal Standards and Standard of Review

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When a

§ 1983 defendant asserts qualified immunity, this affirmative defense creates a presumption that [the defendant is] immune from suit." *Crowson*, 983 F.3d at 1178 (alteration in original) (internal quotation marks omitted). "To overcome this presumption, the plaintiff must show that (1) the officers' alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Id.* (internal quotation marks omitted). If appellate jurisdiction is established, this court "review[s] the district court's denial of summary judgment on qualified immunity grounds de novo, with [its] review limited to purely legal issues." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

## 2.  Constitutional Violation

We first evaluate whether Sergeant Sanders's conduct, under the version of facts the district court assumed true at summary judgment, constituted excessive force. Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendments, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force. *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (2020). When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Bond*,

981 F.3d at 815 (emphasis in original) (quotation marks omitted). In assessing reasonableness, this court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020). The inquiry is an objective one, and one that considers the totality of the circumstances. *Bond*, 981 F.3d at 815–16. Furthermore, reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The district court concluded the first *Graham* factor weighed against a determination that Sergeant Sanders employed excessive force, and the latter factors weighed in favor of such a determination. After weighing the factors and considering the totality of the circumstances, the district court concluded the jury could find Sergeant Sanders engaged in conduct that violated Mr. Vette's constitutional right to be free from excessive force. Our de novo review leads us to the same conclusion.

    *a.  Severity of the crime*

The district court concluded the first *Graham* factor—"the severity of the crime at issue"—favors Sergeant Sanders because it is "undisputed [he] arrived at the scene knowing Mr. Vette was a 'wanted felon,'" and "[f]elonies are deemed more

24

severe than when the underlying crime is a municipal code violation or a

misdemeanor." Dist. Ct. Op. at 10. Mr. Vette argues this factor instead cuts in his

favor because, although he concedes there was a felony warrant out for his arrest, he

was not suspected of a violent crime.

Mr. Vette claims this court's unpublished decision in *Estate of Ronquillo v.

Denver* supports his argument that the first *Graham* factor weighs in favor of a

plaintiff accused of a nonviolent crime, even where that crime is a felony. *See* Aple.

Br. at 26 & n.12 ("[A]s this court has recognized, the first *Graham* factor cuts in

favor of even [a] plaintiff accused of a *nonviolent* felony." (emphasis in original)

(citing *Estate of Ronquillo v. Denver*, 720 F. App'x 434, 438 (10th Cir. 2017)

(unpublished)). But our binding precedent indicates the first *Graham* factor weighs

against the plaintiff when the crime at issue is a felony, irrespective of whether that

felony is violent or nonviolent. *See, e.g., Estate of Valverde*, 967 F.3d at 1061 n.2

(rejecting plaintiff's argument that first *Graham* factor weighed in his favor because

his offenses were nonviolent, reasoning, in part, "our cases have not considered the

nature of a felony in determining that it is a serious offense under the first *Graham*

factor"); *Lee v. Tucker*, 904 F.3d 1145, 1149 (10th Cir. 2018) (explaining that

evaluating severity using the felony/misdemeanor distinction is "consistent with the

many cases in which we have held that the first *Graham* factor may weigh against the

use of significant force if the crime at issue is a misdemeanor"); *Henry v. Storey*, 658

F.3d 1235, 1239 (10th Cir. 2011) (holding first *Graham* factor weighed in favor of

defendant officer because crime at issue—vehicle theft—is a felony).

Accordingly, here we assume the first *Graham* factor favors Sergeant Sanders because Mr. Vette was wanted for a felony at the time of the challenged use of force. As discussed *infra*, even assuming this factor weighs in Sergeant Sanders's favor, the remaining factors weigh so strongly against significant use of force that he cannot prevail under the totality of the circumstances.

  b.  *Immediacy of threat*

The second *Graham* factor, "whether the suspect poses an immediate threat to the safety of the officers or others," *Graham*, 490 U.S. at 396, "is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force," *Bond*, 981 F.3d at 820 (quotation marks omitted). The district court concluded this factor favors Mr. Vette. We agree.

In evaluating this factor, we "must look at whether the officers [or others] were in danger at the precise moment that they used force." *Emmett*, 973 F.3d at 1136 (alteration in original) (internal quotation marks omitted). Under the version of facts the district court assumed true at summary judgment, Mr. Vette did not pose an immediate threat to Sergeant Sanders or to anyone else at the time Sergeant Sanders struck him in the face and released Oxx to bite him; rather, Mr. Vette had already been apprehended by two officers. Moreover, it is undisputed he was unarmed. Even if justification for some use of force existed prior to Mr. Vette's arrest, "the justification disappeared when [Mr. Vette] was under the officers' control." *Perea v. Baca,* 817 F.3d 1198, 1204 (10th Cir. 2016) (denying qualified immunity to officers for using a taser on a man who had already been arrested). Under these

circumstances, Mr. Vette posed a minimal safety threat at the moment Sergeant Sanders used force against him, and the second *Graham* factor thus weighs against Sergeant Sanders's use of significant force.

   c.  *Active resistance or evasion of threat*

   Finally, we also agree with the district court that the third factor—whether the suspect is actively resisting arrest or attempting to evade arrest by flight—favors Mr. Vette. Like the second factor, when evaluating the third factor we consider whether the plaintiff was fleeing or actively resisting at the "precise moment" the officer employed the challenged used of force. *See, e.g., Emmett*, 973 F.3d at 1136 (concluding "the third *Graham* factor . . . weighs against the use of significant force" because "in the precise moment th[e officer] tased [the plaintiff], [the plaintiff] was no longer fleeing" and "was not actively resisting"). Even though it is undisputed on appeal that Mr. Vette initially fled from law enforcement, he had been apprehended by the point Sergeant Sanders allegedly used force against him. Accordingly, this factor also favors Mr. Vette.

                                          * * *

   We thus conclude that, on the facts the district court determined a jury could find, the first *Graham* factor favors Sergeant Sanders and the latter factors favor Mr. Vette. We further conclude that, under the totality of circumstances, Sergeant Sanders's alleged use of force against Mr. Vette—viz., striking him in the face and releasing a police dog to attack him after he was already apprehended—was

objectively unreasonable. Accordingly, Sergeant Sanders violated Mr. Vette's right under the Fourth Amendment to be free from excessive use of force.

**3. Clearly Established**

Having determined Mr. Vette's version of the facts establishes a violation of a constitutional right, the next question is whether that right was clearly established at the time the alleged conduct occurred. That is, the question is whether Mr. Vette's right not to be attacked by a police dog or punched and hit in the face with a dog chain, after he was already apprehended, was clearly established by December 2017.

*a.  Legal standards*

"To be clearly established, ordinarily there must be prior Supreme Court or Tenth Circuit precedent, or the weight of authority from other circuits, that would have put an objective officer in [defendant]'s position on notice that he was violating [plaintiff]'s Fourth Amendment rights." *Emmett*, 973 F.3d at 1137 (alterations in original) (quotation marks omitted). In making this determination, we may "not . . . define clearly established law at a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam). This directive "is particularly important in excessive force cases." *Id.*

"Nonetheless, even in the Fourth Amendment context, there need not be a prior 'case directly on point,' so long as there is existing precedent that places the unconstitutionality of the alleged conduct 'beyond debate.'" *McCowan v. Morales*, 945 F.3d 1276, 1285 (10th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)); *see also Bond*, 981 F.3d at 824 (noting that, even in excessive force cases,

28

this court's analysis "is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law" (quotation marks omitted)). "Rather, 'the salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional.'" *Bond*, 981 F.3d at 824–25 (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

  b.  *Analysis*

In December 2017, a reasonable officer would have been on notice that striking Mr. Vette in the face and releasing a dog to attack him, after he was already apprehended by two officers, was unconstitutional. Specifically, as of 2017, our precedent was clear "that continued use of force after an individual has been subdued is a violation of the Fourth Amendment." *Perea*, 817 F.3d at 1205.

In *Perea v. Baca*, published in 2016, this court considered an appeal from the denial of qualified immunity in a case where officers shot plaintiff in the chest with a taser ten times in two minutes, including tasering him after he had been subdued. 817 F.3d at 1204. Although at the time of the incident in question, this court had "never held that use of a taser, in and of itself, constitutes excessive force," we nevertheless concluded that "disproportionate use of a taser, and repeated use of a taser against an effectively subdued individual, are clearly established constitutional violations." *Id.* at 1205 n.4.

We reached this conclusion because, under our precedent, it was clearly established that "officers may not continue to use force against a suspect who is

29

effectively subdued." *Id.* at 1204. We explained that several of this court's previous decisions would have put the officers on notice that their conduct violated the Fourth Amendment. *Id* at 1204–05. Among them was *Fancher v. Barrientos*, in which we held that although a single shot fired by an officer may have been a justified use of force, the subsequent six shots were clearly unlawful because they occurred after the arrestee no longer posed a threat of serious harm. 723 F.3d 1191, 1201 (10th Cir. 2013). Similarly, in *Dixon v. Richer*, a Tenth Circuit decision published in 1991, we held that "continuing to strike [a] detainee after he had been subdued was clearly unconstitutional." *Perea*, 817 F.3d at 1205 (characterizing *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991)). There, the plaintiff had alleged that two officers "kicked [him], struck [him] with a flashlight, and then choked and beat [him]," even though he "had his hands up . . . and was not making any aggressive moves or threats." *Dixon*, 922 F.2d at 1463.

*McCoy v. Meyers* also advances our analysis. Although published after the events in question, it concludes that several decisions issued before Sergeant Sanders's alleged conduct here "clearly establish[ed] that the Fourth Amendment prohibits the use of force without legitimate justification, as when a subject poses no threat or has been subdued." 887 F.3d 1034, 1052 (2018) (citing *Dixon*, 922 F.2d at 1463; *Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007); and *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008)). *Cf. Emmett*, 973 F.3d at 1139 (considering, as part of its analysis of the clearly-established prong, a Tenth Circuit

case that "address[ed] events that occurred after the events" in question because it "utilized the same clearly established law to do so"); *Bond*, 981 F.3d at 825 (same).

This court's precedent, summarized above, would make it clear to every reasonable officer that punching an arrestee, hitting him in the face with a dog chain, and allowing a police dog to attack him, all after he is subdued, violates the Fourth Amendment. Thus, it was clearly established by December 2017 that Sergeant Sanders's alleged uses of force violated Mr. Vette's constitutional rights, and he is not entitled to qualified immunity.

## III.   CONCLUSION

We lack jurisdiction over Sergeant Sanders's appeal to the extent he asks this court to review the district court's factual findings. We exercise jurisdiction over Sergeant Sanders's challenges to abstract issues of law, but hold the district court did not err in denying Sergeant Sanders qualified immunity. Accordingly, we **AFFIRM** the district court's denial of Sergeant Sanders's motion for summary judgment, and we **REMAND** to the district court for proceedings consistent with this decision.

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Christopher M. Wolpert<br>Clerk of Court | March 05, 2021 | Jane K. Castro<br>Chief Deputy Clerk |

Mr. Andrew R. McLetchie
Ms. Eden R. Rolland
Fowler, Schimberg, Flanagan & McLetchie
350 Indiana Street, Suite 850
Golden, CO 80401

RE:     **20-1118, Vette v. Sanders, et al**
        Dist/Ag docket: 1:18-CV-01987-KMT

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc:    Ashok Chandran
        Kevin Eli Jason
        Christopher Eberhart Kemmitt
        Mahogane Denea Reed
        Samuel Spital
        Samuel Weiss

CMW/na